DARLING APARTMENT COMPANY, a corporation of the State of Delaware,

*vs.*

WILLARD SPRINGER, JR., constituting the "DELAWARE LIQUOR COMMISSION."

*New Castle, June 22, 1940.*

*William H. Bennethum*, for complainant.

*William S. Potter*, of the firm of Southerland, Berl, Potter & Leahy, for defendant.

THE CHANCELLOR: This case is before this court on a demurrer to the complainant's bill.

The bill, in substance, alleges that the complainant, "Darling Apartment Company," a corporation doing business in the City of Wilmington, holds two several licenses, issued by the Delaware Liquor Commission, which permit it to sell alcoholic liquors on its premises in that city. One of these licenses permits it to sell such liquors by the glass or by the bottle, for consumption in any dining room, taproom or bedroom, authorized by the Commission, and on the premises where sold, pursuant to the provisions of "The Liquor Control Act." The other license permits the "Darling Apartment Company" to sell alcoholic liquors in certain specified quantities, not for consumption on the premises where sold, and, also, as provided in the same act. Both of these licenses were issued May 31st, 1939, and will expire June 30th, 1940. Prior to the filing of the bill, Willard Springer, Jr., constituting the "Delaware Liquor Commission," had notified the Darling Apartment Company that such licenses to sell liquor would be suspended or revoked for a period of one week because that company had knowingly permitted the consumption of alcoholic liquors upon its premises after 12:30 o'clock A. M. on January 21st, 1940, in violation of the provisions of a rule which had been prom-

ulgated by the Liquor Commission September 22nd, 1938. The right of the defendant to revoke or suspend the licenses in question is challenged by the complainant, and injunctive relief is prayed for. The bill does not allege that the complainant operated a hotel, or that it knowingly permitted alcoholic liquors to be consumed on its premises after 12:30 o'clock A. M. on January 21st, 1940. In fact, it denies any such charge, but, by agreement of counsel, the case has been argued both orally and on briefs as though the complainant had specifically alleged those facts. The right of the defendant to suspend the licenses in question under that state of facts will, therefore, be considered and determined regardless of whether, in strictness, that question is raised by the demurrer to the bill.

The liquor licenses issued to the complainant were issued pursuant to the provisions of *Chapter* 18, *Volume* 38, *Laws of Delaware.* That act is entitled "An Act Creating a Commission for the Control of the Manufacture, Distribution, Sale and Transportation of Alcoholic Liquor, Wines and Beer." It is incorporated in *Chapter* 176 of the *Revised Code of* 1935, which includes *Sections* 6130 *to* 6205 inclusive of that volume.

*Section* 6134 of the *Code of* 1935 provides:

"The functions, duties and powers of the Commission shall be the following:

"(1) To adopt and promulgate rules and regulations not inconsistent with the provisions of this Chapter or of the laws of the State of Delaware. All such rules and regulations shall have the force and effect of law;

"(2) To establish by such rules and regulations an effective control of the business of manufacture, sale, dispensation, distribution and importation of 'alcoholic liquors' within and into the State of Delaware, including the time, place and manner in which 'alcoholic liquors' shall be sold and dispensed, not inconsistent with the provisions of this chapter; * * *

"(5) To control the 'manufacture,' 'possession,' 'sale' and 'delivery' of 'alcoholic liquors' in accordance with the provisions of this Chapter; and to control the purchase, possession, transportation and 'sale' of 'alcoholic liquors' by those licensed to 'manufacture' or to 'sell';

"(6)  To grant, to refuse, or to cancel licenses for the 'manufacture' or 'sale' of 'alcoholic liquor,' or other licenses in regard thereto, and to transfer any license granted;

"(7)  To investigate and to prevent every violation of this Chapter, make every seizure of 'alcoholic liquor,' 'manufactured,' 'sold,' kept or transported in contravention thereof and to confiscate such 'alcoholic liquor' whenever required by this Chapter;

"(8)  To act for the purposes of this Chapter, as the competent authority in connection with other matters pertinent thereto."

*Section* 6158 provides:

"(1)  The Commission may cancel or suspend any such license for the sale of alcoholic liquor, if it has reasonable ground to believe:

"a.  That the licensee has violated any provisions of this Chapter or Acts amendatory hereof or any regulation of the Commission pursuant hereto."

*Section* 6162 provides:

"* * * (4)  It is forbidden for any holder of a license for the sale of 'alcoholic liquor' in a 'hotel,' in a 'restaurant,' in a 'club' or in a 'tavern,' to sell the same between twelve o'clock midnight of any day and nine o'clock in the forenoon of the following day, provided that the closing hour may be made earlier in any Municipality by ordinance of the Municipal Corporation. * * *"

It is not denied that under the police powers of the State, the Legislature has broad, regulatory powers over the manufacture, distribution, sale and transportation of alcoholic liquors. See *Meehan v. Board of Excise Commissioners,* 73 *N. J. L.* 382, 64 *A.* 689; 15 *R. C. L.* 255. Exercising that right, the Act in question prohibits the sale of any such liquor in a hotel, restaurant, club or tavern "between 12 o'clock midnight of any day and 9 o'clock in the forenoon of the following day." One of the declared powers and duties of the Commission, created by that Act, is, also, to adopt such rules and regulations, not inconsistent with its provisions, as will bring about "an effective control of the business of manufacture, sale, dispensation, distribution and importation of 'alcoholic liquors' within and into the State of Delaware, including the time, place and manner in which 'alcoholic liquors' shall be sold and dispensed."

Pursuant to the power given it by the statute, the Liquor Commission promulgated a rule, which forbids "any holder of a license for the sale of 'alcoholic liquors' other than the holder of a 'Gathering License', to knowingly permit the consumption of any 'Alcoholic Liquor' on the premises to which such license pertains between 12:30 o'clock in the forenoon and 9:00 o'clock in the forenoon, except on the First day of January in each year."

Perhaps the most important question to determine is whether this rule is of an administrative nature and within the scope of the act, or whether it is purely of a legislative nature and, therefore, illegal. The Legislature had the undoubted power to authorize the Liquor Commission to make such reasonable, administrative rules and regulations, clearly within the general purpose and scope of the Act, as would aid in its complete enforcement; but that power is distinctly of a limited nature, and cannot be used merely to supply omissions in the provisions of any such Act. *State v. Retowski*, 6 *W. W. Harr.* (36 *Del.*) 330, 172 *A.* 257; *Hoff v. State*, 9 *W. W. Harr.* (39 *Del.*) 134, 197 *A.* 75, 79. In considering the validity of a rule of that character, we must bear in mind that the true distinction is between the delegation of the power by the Legislature to a Commission to make a law, which necessarily involves discretion as to what its provisions shall be; and the right to confer upon that Commission a measure of administrative authority and discretion in aid of the execution of such law. *Id.* We must, also, bear in mind that, in order to uphold a delegation of power to an administrative body, there must be discovered in the terms of the act a standard, reasonably clear, whereby the discretion of that body must be governed. In other words, as was aptly said in *Hoff v. State, supra,* "the Legislature must provide an adequate yardstick for the guidance of the administrative body empowered to execute the law * * *." See *State v. Retowski, supra.*

The complainant contends that the Liquor Act merely relates to the control of the manufacture, distribution, sale and transportation of alcoholic liquor, wines and beer, and not to its consumption, and that the rule in question goes beyond its fair scope, and is consequently legislative in character. I am unable to agree with that contention. See *Franklyn Stores Co. v. Burnett,* 120 *N. J. L.* 596, 1 *A.* 2*d* 25. That act was apparently intended to regulate and restrict the sale of alcoholic liquors for beverage purposes; and, as I have already pointed out, any such sales are expressly prohibited by any holder of a license between 12 o'clock midnight of any day and 9 o'clock in the forenoon of the following day.

I think we can safely assume that the Legislature was aware that some measure of inconvenience and annoyance to the neighborhood is ordinarily incidental, even to the legalized sale of liquor, and, therefore, prohibited its sale after what it deemed a reasonable hour at night and before a reasonable hour in the morning. The apparent purpose of that provision was to promote the peace and quiet of the neighborhood in which the licensed premises might be situated, and, perhaps, to some extent, also, to safeguard the welfare and health of the citizens of this State. If the consumption of alcoholic liquors is permitted on the licensed premises after the hours at which sales are prohibited by the statute, it would largely tend to defeat the very purpose of that provision. Patrons could purchase liquors in such quantities shortly before twelve o'clock midnight that it might take hours to consume it, and would thus prevent the closing of the licensed premises at the hour contemplated by the statute. Consequently, when the Liquor Act is read as a whole, my conclusion is that the rule in question is not only purely of an administrative nature, intended to aid in its enforcement, but is, also, clearly within the scope of the rule-making power, as indicated by its provisions.

Because of the lack of any provision for public notice of the context of any rule promulgated by an administrative board, though pursuant to statutory authority, there have been objections to the delegation of that power [see *Goodlove v. Logan,* 217 *Iowa* 98, 251 *N. W.* 39] ; but, within proper limits, that right has, nevertheless, been recognized in this State. See *State v. Retowski,* and *Hoff v. State, supra.* Furthermore, the rule in this case is in no sense an unreasonable exercise of the power given. *Franklin Stores Co. v. Burnett,* 120 *N. J. L.* 596, 1 *A.* 2d 25.

The complainant points out that the act provides for an appeal to the Court of General Sessions of the County in case of a refusal by the Commission to issue a license to sell liquor (*Chapt.* 176, *Sect.* 6151 *Rev. Code* 1935; *Chapt.* 18, *Vol.* 38 *Laws of Del.*) ; and that no such appeal is provided for in case a license is revoked or suspended. It further points out that in case of a suspension or revocation of a license that no hearing before the Commission is required. Because of the lack of these provisions, the complainant contends that the statute violates rights, protected by the Fourteenth Amendment to the Constitution of the United States. But its language indicates that a license to sell liquor is hedged about with so many limitations, conditions and restrictions that it is nothing more than a mere personal privilege. It is, therefore, apparent that it is not such a property right as the Constitution of the United States will protect from revocation or suspension, according to the terms of the act, though no formal procedure or right of appeal is provided for by its terms. See *Law & Order Society of Wilmington v. Pierce,* 6 *Boyce* (29 *Del.*) 589, 102 *A.* 62; *Voight v. Board of Excise Com'rs.,* 59 *N. J. L.* 358, 36 *A.* 686, 37 *L. R. A.* 292; *State v. Woodard,* 68 *W. Va.* 66, 69 *S. E.* 385, 30 *L. R. A.* (*N. S.*) 1004, *note.*[1] Neither *Anheuser-Busch, Inc. v. Walton,* 135 *Me.* 57, 190 *A.* 297 nor *Oklahoma*

---

[1] See, also *United Cigar-Whelan Stores Corp. v. Delaware Liquor Commission,* decided August 14th, 1940, 2 *Terry* (41 *Del.*) 74, 15 *A.* 2d 442.

*Operating Company v. Love,* 252 *U. S.* 331, 332, 40 *S. Ct.* 338, 64 *L. Ed.* 596, relied on by the complainant, are inconsistent with this conclusion.

I have already pointed out that the Liquor Act (*Sect.* 6158, *subd.* (1) *a, Chapt.* 176 *Rev. Code* 1935; *Chapt.* 18, *Vol.* 38 *Laws of Del.*) authorizes the Commission to cancel or suspend any "license" for the sale of alcoholic liquor if there is "reasonable ground to believe" that the "licensee" has violated any of its provisions or "any regulations" of the Commission. Other grounds for the cancellation or suspension of a license provided for in the same section are:

"b. That the licensee has made any false representation or statement to the Commission in order to induce or prevent action by the Commission. * * *

"d. That the licensee is acting as an agent of a 'manufacturer' of 'alcoholic liquor' or has borrowed money or accepted gratuities from such a 'manufacturer' or any agent thereof. * * *

"f. That the licensee is in the habit of using 'alcoholic liquor' to excess.

"g. That the licensee has sold 'alcoholic liquor' in contravention of the provisions of Section 34 of this Chapter [that section makes it unlawful to sell alcohol, spirits or wine to a minor. Other provisions prohibiting the sale to certain other specified persons are, also, covered by the same section].

"h. That the licensee has in his possession or while acting as such licensee has sold or offered for sale any 'alcoholic liquor' not purchased from or through the Commission. * * *

"j. That the licensee has since the granting of his license been convicted of a felony or has been convicted of violating any of the liquor laws of this State, general or local, including the provisions of this Chapter.

"k. That there is any other reason which in the opinion of the Commission based on public convenience or necessity warrants cancelling or suspending such license.

"(2) a. Such cancellation shall entail the loss of the privilege conferred by the license and shall entail the seizure by the Commission of any 'alcoholic liquor' found in the possession of the holder of the license. * * *

"b. The Commission shall within thirty days of the date of cancellation remit to such licensed holder the part of the license fee already paid and pertaining to the unexpired term of such license. In addition, the Commission shall remit to such license holder the amount originally received by

the Commission from such license holder in payment for such 'alcoholic liquor' seized as remains in packages sealed by the Commission, less 10 per cent of such amount received. * * *

"d. The rights conferred by a license may be transferred by the Commission to any representative designated by the 'person' to whom or on behalf of whom such license was originally granted, provided, that such representative shall be a 'person' approved by the Commission. In the case of death of an individual to whom a license has been granted, the Commission may transfer the license to such qualified 'person' as may be recommended by the Executors or Administrators of the Estate of the Deceased licensee."

*Section* 6160 of the same act (*Chapter* 176, *Revised Code* 1935; *Chapt.* 18, *Vol.* 38 *Laws of Delaware*) also provides:

"In case any licensee dies and no application is made for transfer of the license, or the Commission refuses to permit the transfer of the license to another person, the Commission shall return to the legal representative of such deceased person a share of the license fee received proportionate to the number of full calendar months of the unexpired term. * * *"

All of these provisions were dictated by state policy, and, because of the nature of the commodity, the sale of which is regulated by the act. If there were any uncertainty about any license, issued pursuant to its provisions, being a mere privilege, that uncertainty would seem to be dispelled by the language used in *sub-section* (2) *a of Section* 6158 of the *Code*. The complainant contends, however, that in any event the defendant, Willard Springer, Jr., is not the legally constituted "Delaware Liquor Commission," and consequently has no authority to make rules, or to revoke or suspend licenses previously issued. But it does not appear whether the licenses held by the complaint were issued by him.

*Section* 6133 of the *Revised Code of* 1935, among other things, provides:

"THE COMMISSION:—(1) A Commission is hereby created under the name of the 'Delaware Liquor Commission.' The said Commission shall consist of only one (1) member who shall be appointed by the Governor of the State of Delaware. Said member to be appointed by the Governor on or before the fifteenth day of May, A. D. 1933 to serve for the period of five (5) years from the day of the date of said appointment. * * *

"(5) The member appointed to said Commission by the Governor may be reappointed to succeed himself. * * *

"(7) Should the member herein appointed to said Commission die or resign before completing the term to which he was appointed the Governor shall appoint a member to fill said unexpired term."

That section, therefore, expressly creates the Delaware Liquor Commission to consist of one member to be appointed by the Governor, and the term of office is five years. By other and subsequent provisions, "the member appointed to said Commission by the Governor [in 1933] *may be reappointed* to succeed himself"; and should he die or resign before the completion of the term to which he was appointed the Governor is directed to appoint a member to fill the "said unexpired term." But these subsequent provisions do not affect the creation of the office, the mode of filling it, or the term, after the first appointment. For that reason, I am unable to agree with the complainant's contention that Willard Springer, Jr., is not the Delaware Liquor Commission, with all the power and authority that pertains to that office.

The demurrer to the complainant's bill is sustained and the injunctive relief prayed for denied. An order to that effect will be entered.

Note. Upon entry of an order in accordance with the foregoing opinion, the complainant elected to take a final decree dismissing the bill for the purpose of appealing to the Supreme Court. For opinion affirming the decree, see *post p.* 420.