EDYTHE M. CARROLL and ANTHONY B. CARROLL, a partnership t/a Carroll's Sales, Co., Petitioners, v. JOHN G. TARBURTON, EARL L. SHEATS and CHARLES MILLES, Constituting the Commissioners of the Delaware State Board of Agriculture, Respondents.

*(April* 7, 1965)

*CHRISTIE, J. sitting*

*NICHOLAS H. RODRIGUEZ,* of Schmittinger & Rodriguez, for petitioners.

*MERRILL C. TRADER,* Asst. Deputy Atty. Gen. of Kent County, for respondents.

Superior Court of Delaware for Kent County No. 88 Civil Action, 1964.

CHRISTIE, Judge.

This is a proceeding in certiorari to review the action of the Delaware State Board of Agriculture in suspending the permit under which Edythe M. Carroll and Anthony B. Carroll, trading as Carroll's Sales Co., operated its livestock sales barn. Suspension of petitioners' license was stayed until the Board had certified its record of proceedings to this Court and its action had been reviewed.

Petitioners operate a livestock sales barn near the town of Felton, Delaware, and hold a sale each Friday. On April 28, 1964, petitioners received notice from the Board of Agriculture that their livestock trading permit, issued pursuant to Delaware State Board of Agriculture Livestock Dealer Regulations, would be indefinitely suspended on May 15, 1964, for violations of the regulations.

Petitioners were granted a hearing before the Board of Agriculture on May 7, 1964, and at that hearing, contended that the regulations and the statute on which they depend were unconstitutional. The Board overruled their contention and reaffirmed

suspension of petitioners' permit.

Attached to respondent's answer were records of six alleged violations of the regulations, all relating to a failure by petitioners to use required techniques of controlling and suppressing diseases of domestic animals. It will be assumed that these violations existed and were the basis of the Board's decision to suspend petitioner's permit.

The regulations were issued by the Board of Agriculture under the authority of the following statute:

"The State Board of Agriculture shall protect the health of the domestic animals of the State, and determine and employ the most efficient and practical means for detection, prevention, supression, control or eradication of dangerous, contagious or infectious diseases among the domestic animals, to include a blood test and injection test for the determination of the existence of any contagious or infectious disease. For these purposes it may establish, maintain, enforce, and regulate such quarantine and other measures relating to the movement and care of animals and their products, the disinfection of suspected localities and articles and the destruction of animals, as it deems necessary, and may adopt from time to time all such regulations as are necessary and proper for carrying out the purposes of this chapter and chapter 73 of this title. In the case of any contagious disease, the Board or its authorized agents may put under quarantine the entire herd containing the suspected or diseased animal or animals." (3 *Del.Code* Sec.7101).

It is within a state's police power to pass laws to preserve and improve the health of farm animals through proper control of dangerous and infectious diseases so long as the regulating statute does not violate any constitutional standards. See *Campoamor v. State Live Stock Sanitary Bd.*, 136 Fla. 451, 182 So. 277 (1938); *State v. Taylor*, 223 S.C. 526, 77 S.E. 2d 195 (1953); *Stickley v. Givens*, 176 Va. 548, 11 S.E.2d 631 (1940); 65 A.L.R. 525 (1930).

Petitioners contend, however, that the standards incorporated in

the legislation do not adequately guide the State Board of Agriculture and that 3 *Del.Code* Sec. 7101 is consequently an unconstitutional delegation of legislative power. The statutory grant of authority to protect "the health of the domestic animals of the State", according to this view, provides no guide-line for action.

It is well-settled that the General Assembly may grant an administrative agency the power to promulgate rules and regulations which have the effect of law in its area of operation. The power so granted must be limited and defined in such a way that adminsitrative officials can discern and implement the legislative will.

Thus, an administrative agency may be given discretion as to implementation of legislative policy, but not as to determination of legislative policy. See *Hoff v. State,* 9 W.W. Harr. 134, 197 A.75 (Super.Ct. 1938).

The necessity of so delegating the detail work of implementation in a day when there are so many demands on the legislature has long been recognized; and it raises difficult questions as to the proper balance between the flexibility necessary for practical legislation and the requirement that any delegation to an administrative agency be safeguarded by adequate guidelines.

"Generally, a statute or ordinance vesting discretion in administrative officials without fixing any adequate standards for their guidance is an unconstitutional delegation of legislative power. But a qualification to that rule is that where the discretion to be exercised relates to police regulation for the protection of public morals, health, safety, or general welfare, and it is impracticable, to fix standards without destroying the flexibility necessary to enable the administrative officials to carry out the legislative will, the legislation delegating such discretion without such restrictions may be valid. Adequate safeguards and standards to guide discretion must be found in or be inferable from the statute, but the standards need not be minutely detailed, and the whole ordinance may be looked into in light of its surroundings and objectives for purposes of deciding whether there are standards and if

they are sufficient." *State v. Durham,* 191 A.2d 646, 649, 650 (Super. Ct. 1963).

■ In my opinion, the standards and general policy set forth in the statute are adequate to permit reasonable regulations thereunder. The goal is animal health, and the method is that which the State Board finds is "the most efficient and practical means for the detection, prevention, supression, control, or eradication of dangerous, contagious, or infectious diseases". This establishes a technical, medical, and sanitary standard as a guide to the Board's activity in pursuing a limited goal. The statute also offers a number of non-exclusive alternatives as control devices. The statute is not in itself unconstitutional. See *Darling Apartment Co. v. Springer,* 25 Del.Ch. 420, 22 A.2d 397, 137 A.L.R. 803 (1941); *Vallat v. Radium Dial Co.,* 360 Ill. 407, 196, N.E. 485, 99 A.L.R. 607 (1935); *Abelson's Inc. v. New Jersey State Bd. of Optometrists,* 5 N.J. 412, 75 A.2d 867, 22 A.L.R.2d 929 (1950). *State v. Taylor,* supra; Village of Waterbury v. Melendy, 109 Vt. 441, 199 A. 236 (1938).

■ Petitioners further contend that the regulations issued by the State Board of Agriculture are unconstitutional because they are discriminarory and deny petitioners equal protection of the law. Specifically, the exclusion of "breeders' association sales or sales conducted on the premises where such livestock are raised" from such regulations is viewed as unfairly discriminating against dealers, commission merchants and salesbarn operators who are regulated.

The retulations may be invalid for this reason only if the classification of those covered and those not covered has no reasonable basis. See *Rogers v. State,* Super. Ct.., 199 A.2d 895 (1964); *Van Winkle v. State,* 4 Boyce 578, 91 A.385 (1914); *Hotel Suburban Sys. v. Holderman,* 42 N.J. Super. 84, 125 A.2d 908 (1956).

The state suggests that reasonable distinguishing factors exist. It maintains that animals are selected for breeder's association sales partially on the basis of their health status, and that livestock sold on the premises where they are raised are "generally" inspected within

thirty days of sale and their owners are very cooperative so that difficulties and danger are reduced to a minimum.

The classification here made appears, upon its face, to be without adequate basis; it seems arbitrary and the explanation thereof inadequate. Nothing in the record shows a reasonable ground for exempting cooperating owners of livestock likely to have been recently inspected or carefully chosen, from general regulations governing the health of livestock offered for sale. On the existing record I have little choice. I find that the regulations unfairly discriminate and thus that they deny equal protection of the law.

Petitioners also contend that the State Board of Agriculture exceeded the authority granted to it by the legislature when it issued regulations to prevent sales of animals manifesting "symptoms of disease" when the enabling statute grants authority only as to "dangerous, contagious and infectious diseases". It is assumed, however, that "symptoms" as used in the regulations refers to symptoms of the designated types of diseases. Furthermore, there is no evidence before the Court that the regulation has been applied or is intended to apply beyond the limited scope of the statutory language. This contention is therefore viewed as unmerited.

Petitioners further contend that the Board exceeded the authority granted to it when it established a system requiring livestock dealers to obtain permits when no such authority was mentioned in the legislation.

An administrative board can be granted authority to license businesses or individuals for purposes of regulation or revenue, and they can be given broad discretion in the granting or denial of licenses provided they are given adequate guidance in the exercise of this discretion by the legislative enactment. See *Wilmington Vitamin and Cosmetic Corp. v. Tigue,* 183 A.2d 731 (Super.Ct.1962), *State v. Conragan,* 58 R.I. 313, 192 A. 752 (1937).

It should be noted here that if an administrative agency

has a right to license, it usually has the additional right to attach conditions thereto and to revoke the license. Since such action may put persons such as the petitioners out of business, it is a drastic remedy.

An administrative agency has no right to incorporate substantive matters or drastic remedies into its regulations which are not implied, necessary or incidental to the powers granted to it by the statute under which it operates. See *Wilmington Country Club v. Delaware Liquor Comm'n,* 8 Terry 352, 91 A.2d 250 (Super.Ct. 1952), *Darling Apartment Co. v. Springer,* 25 Del. Ch. 98, 15 A.2d 670 (Ct. of Chancery, 1940) aff'd 25 Del. Ch. 420, 22 A.2d 397 (1941); *Hurst v. Warner,* 102 Mich. 238, 60 N.W. 440, 26 L.R.A. 484 (1894); *Commonwealth v. DiMeglio,* 385 Pa. 119, 122 A.2d 77, 56 A.L.R. 2d 1120 (1956).

A power to require a license is usually a clearly expressed power. Here such a power could exist only if it was implicitly included in the power expressly granted. There is only one Delaware case dealing with a claim by an administrative agency that it had an implied power to require a license. In that case, it was held that the granting of power to provide against the adulteration of milk or cream available for purchase did not include within it the power to license milk dealers. *Gray v. Mayor, etc., of City of Wilmington,* 2 Marv. 257, 43 A. 94 (Super. Ct. 1896). See also *Henry v. Parrish,* 307 Ky. 559, 211 S. W. 2d 418 (1948). State ex rel *Sheldon v. City of Wheeling,* 146 W. Va. 691, 122 S. E. 2d 427 (1961). Compare *Commissioners of Cambridge v. Cambridge Water Co.,* 99 Md. 501, 58 A. 442 (1904; *Kirsch Holding Co. v. Borough of Manasquan,* 24 N. J. Super. 91, 93 A.2d 582 (1952); *Cruise & Smiley Const. Co. v. Town Council of Lincoln,* 42 R. I. 408, 108 A. 419 (1920).

In the instant case, the State Board of Agriculture has not been granted the express authority to regulate, license or require permits as to livestock dealers. If such licensing is not incidental, implied, or necessary and proper in the light of the objectives and the power granted, the regulations issued in connection therewith are void.

Regulation, through the licensing of those who sell domestic animals, is at best an indirect means of controlling animal diseases even though it may prevent those using improper methods from handling diseased or potentially diseased animals. Had the General Assembly wished to take this additional step and impose this severe sanction, it could have so provided. Instead, it wrote other sanctions into law, including quarantine, destruction, segregation or slaughter of diseased animals, and the imposition of fines of up to $100 on those violating the regulations. 3 *Del.Code,* Ch. 71 & 73. I find that the legislation did not carry with it an implied power to require those who sell livestock to obtain permits.

Since the legislation does not include licensing as a regulatory device and since the power to require licenses of those who sell livestock cannot be implied from the statute, the act of the State Board of Agriculture in issuing regulations requiring permits to sell livestock went beyond the authority granted to it.

Petitioners also contend that the regulations and the statute are vague and difficult to understand. There appears to be merit to this contention. No definitions of terms are contained in the regulations and they are difficult to interpret. Even the State admits that the regulations should be redrafted.

The regulations in their present form are declared to be invalid and unenforceable. Judgment will be entered for petitioners and the case will be remanded with instructions that the Board may take no further action under the existing regulations.

New legislation to specifically provide for the licensing of those who sell livestock, or new regulations to carry out the legislative intent under the existing law without licensing will be required. In either case, the wording of the regulations should be clarified and the classification of those covered by the regulations must bear a reasonable relationship to the objectives of the legislation. Meanwhile, nothing herein contained would prevent the prompt promulgation of new and fair

interim regulations of uniform application to detect, prevent and control diseases of domestic animals by reasonable regulation of the sale or exchange of livestock.

It is so ordered.