**FORMOSA PLASTICS CORPORATION, Delaware, a Delaware corporation, Plaintiff Below, Appellant,**

v.

**John E. WILSON, III, Secretary of the Department of Natural Resources and Environmental Control, and the Department of Natural Resources and Environmental Control, Defendants Below, Appellees.**

Supreme Court of Delaware.
Submitted: Nov. 4, 1985.
Oral Decision: Nov. 4, 1985.
Written Decision: Feb. 12, 1986.

Stephen E. Herrmann (argued), Richard J. Abrams and Richard G. Elliott, Jr. of Richards, Layton & Finger, Wilmington, for appellant.

Jeanne L. Langdon (argued), Fred S. Silverman and Loren C. Meyers, Dept. of Justice, Wilmington, for appellees.

Before CHRISTIE, C.J., HORSEY and MOORE, JJ.

MOORE, Justice:

The appellant Formosa Plastics Corporation, Delaware (Formosa) petitioned the Court of Chancery to preliminarily enjoin the emergency revocation of its environmental permits ordered by the Secretary of the Department of Natural Resources and Environmental Control (the Department). Injunctive relief was denied Formosa and this interlocutory appeal followed.[1] Formosa contends that: (1) it would be irreparably harmed if the injunction did not issue, (2) the Secretary lacked authority to revoke the permits under the Environmental Control Act, 7 *Del.C.* § 6001 *et seq.* (the Act), (3) the Secretary's order, revoking the permits without a hearing, violated due process standards of the United States and Delaware Constitutions, and (4) the Secretary's actions violated the Delaware Administrative Procedures Act, 29 *Del.C.* § 10101 *et seq.* While we agree that Formosa faced irreparable injury, we conclude that the Secretary had full power to act in these circumstances, and properly did so. Accordingly, we affirm.

## I.

Formosa manufactures polyvinyl chloride, a product which can pose certain health dangers to those who work in or live near the facility. The plant's operations, therefore, are subject to strict regulation by the Department. Formosa's operating

---

**1.** Formosa faced an immediate shut-down of its Delaware plant as a result of the Court of Chancery's decision. In view of the gravity of the legal issues presented we accepted the appeal on Friday evening, November 1, 1985, and ordered the matter expedited. The parties' briefs were filed on November 2, argument was on Monday afternoon, November 4, and our oral decision affirming the Court of Chancery was announced in open court later that day with the proviso that this more detailed opinion would follow in due course.

permits cover the manufacture, storage and shipment of polyvinyl chloride, as well as the discharge of effluents into the Delaware River. Each of these permits relates to a specific plant function: boilers, storage tanks, pulverizers, product collection, bagging, product transfer, bulk loading, ventilation, unloading, conveyers, and effluent discharge, etc. Moreover, the permits impose certain specific conditions and limitations upon these operations. Common to those permits, regulating functions posing a danger of air pollution, are the following provisions;

1—The permit is issued subject to certain enumerated conditions.

2—Among the conditions imposed are:

(a) air contaminant emission levels shall not exceed those stated either in the permit or otherwise prescribed by the Department in its Regulations Governing the Control of Air Pollution.

(b) emergency conditions that require venting of materials to the atmosphere or create a condition of air pollution shall be reported to the Division of Environmental Control *immediately.* (Emphasis added).

(c) failure to comply with the provisions of the permit shall be ground for suspension or revocation.

The permit regulating the discharge of effluents into the Delaware River is also quite detailed. It applies to and sets limitations upon the quantities of discharge and maximum concentrations of pollutants in the discharge. It imposes monitoring and reporting requirements, including notification by Formosa of non-compliance, and provides for the modification, revocation, reissuance and termination of the permit.

The most recent chapter in the controversial history of Formosa's plant began on October 25, 1985, when the Secretary notified the company by letter that all of its 37 operating permits would be revoked effective midnight, November 1, 1985. The Secretary's letter detailed a consistent pattern of environmental regulation violations by Formosa since it acquired the plant in May,

1981. The letter also advised Formosa that it could request a pre-revocation hearing before the order was effective.

The violations cited by the Secretary show an almost complete disregard by Formosa of the State's environmental regulations. Some of the enumerated reasons for the revocations are that: (1) on at least 40 separate dates vinyl chloride monomer (VCM), an explosive gas and known carcinogen, was released into the atmosphere from equipment at the plant; (2) following the issuance of a cease and desist order, requiring Formosa to stop violating air pollution regulations, VCM was released on 10 separate occasions; (3) chronic breakdowns occurred in the plant's emission monitoring system; (4) since December, 1984, the State had filed two suits to require Formosa to comply with environmental regulations; (5) there were violations of a consent order entered in settlement of one of the suits; and (6) there were releases of VCM on October 15 and October 17, 1985, the latter being severe enough to activate the plant's sprinkler system and to force employees to use breathing equipment. The October 15 VCM release was not reported until more than seven hours had elapsed; the October 17 release was not reported at all, and the Department only learned of the violation through an anonymous source.

However, there is more. At one point the Department discovered that a segment of the emission monitoring equipment, an integral part of the self-reporting system required by regulations, was missing, and the system was thereby rendered inoperable. As for the discharge of wastewater from the manufacture of polyvinyl chloride resin, it was found that Formosa had been in violation of permit limits in 16 of the 24 months from October 1983 to September 1985. Regarding the discharge of sanitary wastewater, the permit limits had been violated in 44 of the 45 months between January 1982 and September 1985. Moreover, when a hurricane passed through Delaware in September 1985, Formosa did not adequately prepare for the storm, and was the

only operator of a wastewater treatment plant, out of hundreds in the State, to report overflows of treatment lagoons due to the abnormal rains.

As the final reason for revoking the permits, the Secretary concluded from these repeated violations that Formosa could not, or would not, comply with State environmental laws, and could not reasonably be expected to comply in the future. The Department stated that the letter of October 25 was a determination by the Secretary that Formosa's operations were a continuing threat to the safety and welfare of the local citizens, thereby creating an emergency which justified the action taken. That was so, despite the fact that the plant was not then known to be in current violation of any environmental standards.

On October 29, Formosa asked the Secretary to stay his action, and appealed the revocations to the Environmental Appeals Board (the Board) pursuant to 7 *Del.C.* § 6008.[2] The stay was denied, but the Secretary granted Formosa a pre-revocation hearing to be held by his designate on October 31, and in a letter to Formosa's counsel noted that "[i]t is clear from past experience ... that Formosa's ... plant cannot be operated in a safe and environmentally sound manner."

Formosa then declined the pre-revocation hearing and promptly filed suit in the Court of Chancery to enjoin the Secretary's action. The Chancellor refused the injunction, and this interlocutory appeal followed.

## II.

In his ruling, the Chancellor acknowledged that Formosa faced imminent irreparable injury but rejected its other claims. On appeal Formosa presses its contentions that the Secretary lacked authority to revoke the permits, or at least lacked the power to revoke the permits without first affording Formosa a meaningful hearing. The company asserts that: (1) the Secretary's powers are clearly delineated and limited under the Act, 7 *Del.C.* ch. 60, and that nothing therein authorizes the Secretary to revoke a permit; (2) the deprivation of Formosa's valuable interests (the permits) without a prior hearing violated its right to procedural due process under *Fuentes v. Shevin,* 407 U.S. 67, 91, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972); (3) any revocation procedures must conform to the Delaware Administrative Procedures Act, 29 *Del.C.* ch. 101; and (4) the Secretary violated Formosa's procedural due process rights to notice and an opportunity to defend by failing to identify any statute or regulation establishing an applicable standard of care. Finally, Formosa argues that 7 *Del.C.* § 6008(f) entitles it to a stay for good cause pending its appeal to the Board.[3]

## A.

To obtain injunctive relief, a plaintiff must show a reasonable probability of success on the merits and the likelihood of irreparable injury absent the injunction. In

---

**2.** This statute provides:

§ 6008. Appeal to Board.

(a) Any person whose interest is substantially affected by any action of the Secretary may appeal to the Environmental Appeals Board within 20 days after the Secretary has announced the decision. The Board may affirm, modify or reverse the decision of the Secretary.

(b) Whenever a decision of the Secretary concerning a permit is appealed, the Board shall hold a public hearing in accordance with § 6006 of this title.

(c) If the Secretary is overruled by the Board, then the Board shall state reasons for its decision.

(d) No decision of the Board shall be valid unless signed by a minimum of 5 members.

(e) There shall be no appeal of a decision by the Secretary to deny a permit on any matter involving state-owned land including subaqueous lands.

(f) No appeal shall operate to stay automatically any action of the Secretary, but upon application, and for good cause, the Secretary or the Court of Chancery may stay the action pending disposition of the appeal.

**3.** See n. 2, *supra.*

deciding the matter the Court may balance the conveniences of and the possible injuries to the parties. *Gimbel v. Signal Cos.*, Del.Ch., 316 A.2d 599 (1974), *aff'd,* Del. Supr., 316 A.2d 619 (1974). In short, an injunction must be earned. It does not issue on any less significant basis.

There is little doubt that revocation of the permits will cause Formosa substantial and irreparable harm. It must close its plant at considerable cost. Moreover, if the closure is improper, any resultant damages sustained by Formosa are not recoverable in light of Delaware's sovereign immunity. *Department of Community Affairs v. M. Davis & Sons, Inc.,* Del.Supr., 412 A.2d 939 (1980). Clearly, such a shut-down would adversely affect Formosa's business, its business reputation and its employee relationships. The Chancellor observed that "it would offend commonplace understanding to deny that an unplanned closure of an essential plant could be accomplished without significant injury to business relationships of various kinds." *Formosa v. Wilson,* Del.Ch., C.A. No. 8216, slip op. at 11 (Allen, Chancellor November 1, 1985). We fully agree, but as the Chancellor recognized, that does not end the matter.

### B.

Despite the threat of imminent irreparable injury, the Chancellor found that there was no reasonable probability of success on the merits of Formosa's claims. We agree and address those issues in turn.

**4.** The legislature's intent is expressly stated in the findings, policy and purpose of 7 *Del.C.* § 6001. Its provisions, pertinent to this discussion, are:

(a) *Findings.* The General Assembly hereby makes the following findings concerning the development, utilization and control of the land, water, underwater and air resources of the State:

(5) The land, water, underwater and air resources of the State must be protected from pollution in the interest of the health and safety of the public;

(6) The land, water, underwater and air resources of the State can best be utilized, conserved and protected if utilization thereof is

### 1. *The Secretary lacked authority to revoke the permits.*

Formosa contends, and the Department acknowledges, that the Act does not confer any specific power upon the Secretary to revoke these licenses. Thus, it is argued that the Secretary's action was wholly improper.

■ Generally, the authority to grant a license includes the power of revocation whether it is expressly or impliedly reserved by statute. *Carroll v. Tarburton,* Del.Super., 209 A.2d 86 (1965); 53 C.J.S. *Licenses* § 44 (1948); 51 Am.Jur.2d *Licenses and Permits* § 58 (1970); *Bartlett v. State Real Estate Commission,* Neb.Supr., 188 Neb. 828, 199 N.W.2d 709 (1972); *Arrow Express Forwarding Co. v. Iowa State Commerce Comm.,* Ia.Supr., 256 Iowa 1088, 130 N.W.2d 451 (1964). That principle clearly applies here.

While there is no express statutory right to revoke these permits, the Secretary nevertheless has substantial enforcement responsibilities supporting his ultimate power of revocation. Without any modification or limitation upon his powers and duties, the Act provides that:

(a) The Secretary shall enforce this chapter. 7 *Del.C.* § 6005(a).

The terms of this statute are broad and plenary. We construe them as the imposition of an emphatic duty and a conferral of all necessary concomitant powers to give full force and effect to the clear legislative mandate of the Act.[4] Moreover, the Secre-

restricted to beneficial uses and controlled by a state agency responsible for proper development and utilization of the land, water, underwater and air resources of the State;

(7) Planning for the development and utilization of the land, water, underwater and air resources is essential in view of population growth and the expanding economic activity within the State.

(b) *Policy.* In view of the rapid growth of population, agriculture, industry and other economic activities, the land, water and air resources of the State must be protected, conserved and controlled to assure their reasonable and beneficial use in the interest of the

tary's regulatory powers are specific. Under 7 *Del.C.* § 6010(a) he may "adopt, amend, modify or repeal rules or regulations, or plans ... to effectuate the policy and purposes of [the Act]." By virtue of that power the Secretary has promulgated regulations governing the control of air pollution. Among their provisions are specific standards limiting vinyl chloride emissions from polyvinyl chloride plants. Likewise, the Secretary has adopted regulations governing the control of water pollution. All of Formosa's permits are issued pursuant to, are consistent with, and make specific reference to, the applicable provisions of those regulations.

A further ground for our conclusion, respecting the Secretary's authority to revoke permits, is his unquestioned power to impose reasonable conditions upon their issuance. Thus, "[W]hoever violates ... any condition of a permit issued pursuant to § 6003 of this title ... shall be punishable ..." 7 *Del.C.* § 6005(b). "Any person who willfully or negligently ... violates any condition or limitation included in a permit issued pursuant to § 6003 of this title ..." 7 *Del.C.* § 6013(a). "The Secretary shall have the power to issue an order to any person violating any ... permit condition ... to cease and desist from such violation ..." 7 *Del.C.* § 6018. By § 6005(b), those who violate the chapter, rules or regulations thereunder, or conditions of a permit, may be fined or enjoined if the violations are continuing, or where there is a substantial likelihood a violation will recur, the Secretary may seek an injunction. Section 6013 imposes criminal penalties for willful or negligent violations of Section 6003, or

of a condition or limitation in a permit issued pursuant to Section 6003.

In our opinion the authority to place such reasonable conditions upon the issuance of permits also confers a rectifying power to revoke them when the conditions are violated. Not only is this consistent with common sense, but it gives proper effect to the clear legislative mandate of 7 *Del.C.* § 6020 that the Act be liberally construed to achieve its purpose:

This chapter, being necessary for the welfare of the State and its inhabitants, shall be liberally construed in order to preserve the land, air and water resources of the State. 7 *Del.C.* § 6020.

Although we recognize that broad and pervasive powers repose in the Secretary, it is not to be overlooked that procedural safeguards and fairness must accompany their exercise. This is essential in marking the "difference between rule by law and rule by whim or caprice". *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 179, 71 S.Ct. 624, 652, 95 L.Ed. 817 (1951).

2. *Formosa's due process rights were violated.*

Before a party can be deprived of life, liberty, or property, it has the right to notice and a hearing in a meaningful time and a meaningful manner. *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). The due process requirements of the Fifth and Fourteenth Amendments of the United States Constitution dictate that result as do Art. I, sections

people of the State. Therefore, it is the policy of this State that:
(1) The development, utilization and control of all the land, water, underwater and air resources shall be directed to make the maximum contribution to the public benefit; and
(2) The State, in the exercise of its sovereign power, acting through the Department should control the development and use of the land, water, underwater and air resources of the State so as to effectuate full utilization, conservation and protection of the water and air resources of the State.

(c) *Purpose.* It is the purpose of this chapter to effectuate state policy by providing for:
(1) A program for the management of the land, water, underwater and air resources of the State so directed as to make the maximum contribution to the interests of the people of this State;
(2) A program for the control of pollution of the land, water, underwater and air resources of the State to protect the public health, safety and welfare;

7–9 of the Delaware Constitution. However, certain extraordinary circumstances may justify a deprivation before a hearing, when:

"The seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the state has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." *Fuentes v. Shevin,* 407 U.S. at 90–91, 92 S.Ct. at 1999–2000; *see also Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 678, 94 S.Ct. 2080, 2089 [40 L.Ed.2d 452] (1974).

Applying those standards to this record, we are satisfied that the Secretary's pre-hearing revocation was justified as arising from an extraordinary situation.

■ First, the public interests secured by the Secretary's action were the safety and welfare of the citizens living or working in or near the Formosa plant. This is entirely consistent with the findings, policy and purpose of the Act expressly stated in 7 *Del.C.* § 6001(a)(5–7), (b)(1) and (2), and (c)(1) and (2). (See n. 4, *supra.*)

Second, there was a special need for very prompt action. Formosa's long record of flouting environmental regulations, the two recent severe VCM emissions and the chronic dysfunction of the emission monitoring system were significant factors justifying the Secretary's conclusion that Formosa could not be relied on to operate the plant in a safe and environmentally sound manner. A catastrophe need not happen before a State official can take reasonable emergency action to thwart a reasonably apparent imminent threat to the public.

Third, the State has kept strict control over its monopoly of legitimate force. Unlike *Fuentes,* where the deprivation occurred at the request of a private party, the revocation of these permits was a government-initiated action for the benefit of the public pursuant to a clear statutory and regulatory framework. *Fuentes* requires that this determination be made under the standards of a narrowly-drawn statutory predicate. Given the very specific regulations issued by the Secretary to effectuate the policy and purposes of the Act [7 *Del.C.* § 6010(a) ], his duty of enforcement [7 *Del.C.* § 6005(a), *supra* ], his powers to grant or deny permits [7 *Del.C.* § 6003], and the detailed conditions and limitations placed by him upon Formosa's permits issued pursuant to well-defined regulations, we consider the Secretary's actions under these facts and circumstances to be entirely justified and constitutionally supportable.

Here, the standards upon which the Secretary acted are as specific, perhaps even more so, than other statutes which have withstood due process challenges based on a pre-hearing deprivation. *Hodel v. Virginia Surface Min. & Reclam. Ass'n.,* 452 U.S. 264, 301, 101 S.Ct. 2352, 2373, 69 L.Ed.2d 1 (1981); *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 595–96, 70 S.Ct. 870, 871, 94 L.Ed. 1088 (1950); *Fahey v. Mallonee,* 332 U.S. 245, 250, n. 1, 67 S.Ct. 1552, 1554, n. 1, 91 L.Ed. 2030 (1947); *see also Air East, Inc. v. National Transportation Safety Board,* 512 F.2d 1227, 1232 (3rd Cir.1975), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). Thus, we are satisfied that the Secretary's action was consistent with both United States and Delaware constitutional principles. U.S. Const. amendments V and XIV, § 1; Del. Const. Art. I, §§ 7–9.

## 3. The Secretary's action is subject to the Administrative Procedures Act.

■ Delaware's Administrative Procedures Act (APA), 29 *Del.C.* ch. 101, serves to standardize the procedure and methods of certain state agencies enumerated in 29 *Del.C.* § 10161. *See also* 29 *Del.C.* § 10101. Although the Board is listed as an agency subject to the APA, the Secretary and the Department clearly are not.

Formosa argues that by 29 *Del.C.* § 10132(b) the Secretary's order must be stayed until the Board issues a final order, but by § 10161 it is only the Board's actions which are covered by the APA, not the Secretary's or his Department. Under the circumstances there is no requirement of a stay of the Secretary's revocation of Formosa's permits until an appeal is heard and a final order issued by the Board. Indeed, the applicable law is explicit on this point. (See 7 *Del.C.* § 6008(f), n. 2, *supra.*)

*4. The Secretary must provide more specific notice.*

Formosa argues that it has faced the loss of its permits without being advised of the standard of care to which it must adhere. Moreover, it claims not to have been apprised of any specific accusations that are factually related to the alleged permit violations.

 The Chancellor considered the standard of care issue irrelevant. He ruled, and we agree, that the proper question was simply whether Formosa was able to operate the plant within the conditions of the permits, and the regulations and statutes governing them. Essentially, this upheld the Secretary's application of strict liability to Formosa's actions. The Chancellor also concluded that while the question of the effectiveness of the October 25 letter for notice purposes was moot, a more detailed factual statement from the Department, including its legal bases for the revocations, was warranted before Formosa prosecuted its appeal to the Board. We fully agree with that reasoning.

*5. Formosa demonstrated good cause for a stay.*

Under 7 *Del.C.* § 6008(f), appeals to the Board do not automatically stay the Secretary's actions, but the Secretary or the Court of Chancery may grant a stay for good cause pending appeal. (See n. 2, *supra.*) Here, the trial court concluded that where the Secretary made a reasonable finding of an imminent threat to the

public safety, such a danger outweighs any injury to Formosa, and good cause for a stay has not been demonstrated. Again, we agree. This was a matter of discretion, and clearly, there was no abuse of that authority.

### III.

In conclusion, we hold that the Secretary had full power to revoke these permits under the circumstances of this case. Given Formosa's past record, and the statutory and regulatory framework under which the Secretary acted, we are satisfied that these revocations comported with the due process standards imposed by U.S. Const. amendments V and XIV, § 1, and Del. Const. Art. I, §§ 7–9. Accordingly, the decision of the Court of Chancery is

AFFIRMED.