Gentry D. BUTLER, Appellant
Below, Appellant,

v.

INSURANCE COMMISSIONER of the
State of Delaware, Appellee
Below, Appellee.

No. 72, 1996.

Supreme Court of Delaware.

Submitted: Dec. 3, 1996.

Decided: Jan. 9, 1997.

John S. Grady of Grady & Hampton, Dover, for Appellant.

Marc P. Niedzielski, Deputy Attorney General, Dover, for Appellee Insurance Commissioner of the State of Delaware.

Before VEASEY, C.J., HARTNETT and BERGER, JJ.

VEASEY, Chief Justice:

■ In this appeal we hold that the Insurance Commissioner must comply with statutory procedures when establishing terms under which licensees of the Insurance Department may have their licenses suspended, revoked or reinstated. Since the Insurance Code and the Administrative Procedures Act set forth comprehensively the procedures to be applied, informal practices which are not incorporated in the Code, regulations or written policies of the Department promulgated pursuant to the Code may not result in prejudice to the status of licensees. Accordingly, an unfulfilled written agreement between the Department and a licensee pursuant to an unwritten policy of the Department does not constitute violation of a consent order and is unenforceable against a licensee if the agreement does not conform to the statutory requirements or a properly promulgated regulation or written policy of general application.

### Facts

Mr. Gentry D. Butler was a licensed resident insurance agent in the State of Delaware. The Delaware Insurance Commissioner regulates the transaction of insurance for the State. On August 1, 1991, the Department of Insurance held a hearing during which Mr. Butler admitted to allegations that he committed certain ethics violations of the Delaware Insurance Code.

On September 3, 1991, Mr. Butler's license was suspended by order of then Insurance Commissioner David N. Levinson for a 12-month period.[1] The suspension order constituted a final decision of the Commissioner and did not state any criteria as conditions for reinstatement of his license. Mr. Butler did not appeal the decision.

In the Spring of 1993, Mr. Butler applied to have his license reinstated. Since Mr. Butler's license had been suspended for one year, Eugene Reed, then Director of Licensing for the Department, informed Mr. Butler that he was required to resubmit a license application and retake the licensing examination in accordance with a provision of the

---

1. *In the Matter of Gentry Butler,* Docket No. 91–    030 (Sep. 3, 1991).

Insurance Code, which is now 18 *Del.C.* § 1724(a)(1).[2] Mr. Butler submitted a new application, took the examination again and achieved a passing score.

Mr. Reed reviewed Mr. Butler's application. With the oral approval of the new Commissioner, Donna Lee H. Williams, Mr. Reed granted Mr. Butler's reinstatement, subject to the condition that Mr. Butler complete three ethics courses. Mr. Butler was not told at the time he submitted his application that there would be additional conditions placed upon the reinstatement of his license, and no written regulation or policy of the Department provided for such a condition. Mr. Reed testified that, over the last two or three years, the Department had generally required the completion of course work for any licensee applying for reinstatement whose license had been suspended or revoked. This requirement is not a written policy, law, rule, order or regulation of the Department, notwithstanding the provision of the Code which is now 18 *Del.C.* § 1726, authorizing the Commissioner to promulgate "regulations and/or prerequisites" requiring additional education of licensees.[3]

In a letter dated May 7, 1993, Mr. Reed wrote to Mr. Butler listing the three ethics courses he required Mr. Butler to complete before the Department would reinstate his license. These courses were to be separate and distinct from, and in addition to, the continuing education requirements to which all licensees are subject. Mr. Reed stated that he informed Mr. Butler that if Mr. Butler did not wish to take the courses, he could request a hearing on the matter. Mr. Butler did not request a hearing. Mr. Butler testified that he believed he had no choice about signing the letter if he wanted his license reinstated.

On May 10, 1993 Mr. Butler signed the letter of May 7th, agreeing to complete the required course work by November 1, 1993. The letter stated that noncompliance with its terms would result in penalties and permanent revocation of his license.

Although the Department granted Mr. Butler three extensions, Mr. Butler still had not successfully completed the three courses as of December 12, 1994. The Department then filed a Rule to Show Cause requiring Mr. Butler to appear and show cause why the Department should not revoke his license pursuant to 18 *Del.C.* § 1732(c)(2) [4] for willful

**2.** On July 1, 1996, the Delaware General Assembly amended Title 18, chapter 17, of the Delaware Code by striking the chapter in its entirety and recodifying it with a new chapter 17 which renumbers various sections and makes numerous technical revisions to the qualifications and professional standards required of agents, appraisers and insurance agencies. 70 *Del.Laws*, c. 424 § 1. Since the amended provisions applicable in this case do not alter the substantial rights of any party to this action, we will refer in this Opinion to the current provisions. Current section 1724(a)(1) provides: ·

**§ 1724. Exemption from Written Examination.** (a) The following shall be exempt from the requirement for a written examination:

(1) Every applicant for a resident license covering the same line or lines of insurance for which the applicant previously held a license in this State, other than a temporary license, within 12 months next preceding the date of the application, unless such previous license was revoked, suspended or renewal thereof was refused by the Commissioner.

**3.** 18 *Del.C.* § 1726 provides:

**§ 1726. Additional or continuing education.** In addition to meeting the standards prescribed in other sections of this chapter for the issuance of a license, the Commissioner

may promulgate regulations and/or prerequisites which will establish reasonable standards and criteria for requiring additional or continuing education of licensees, in order to ensure the maintenance or improvement of a licensee's insurance skills and knowledge. Failure to provide proof of meeting continuing education requirements may result in suspension of license(s). No regulation may require additional or continuing education for limited representatives qualified and · licensed under § 1716(f) of this title in any lines other than those for which licensure has been granted.

**4.** Section 1732(c)(2), in its current form, provides:

**§ 1732. Violations; Penalty Bond.**

(c) The Commissioner ... may, following hearing, suspend, revoke, refuse to issue, and/or refuse to continue a license for any person or firm found to have committed one or more of the following offenses:

(2) willful violation of or noncompliance with any insurance laws or any lawful regulation, rule, or order of the Department, Com-

noncompliance with a "consent order" of the Department. A hearing was scheduled for February 14, 1995.

After the hearing, the hearing officer recommended to the Commissioner that Mr. Butler's license be revoked. On July 12, 1995, the Commissioner signed an order revoking Mr. Butler's license because of Mr. Butler's violation of a "consent order" dated May 10, 1993 (the date Mr. Butler signed the letter of May 7th). The Superior Court affirmed the Commissioner's decision on January 19, 1996.[5]

### Scope and Standard of Review

▮▮▮▮ When reviewing the decision of an administrative agency, this Court must determine whether the agency ruling is supported by substantial evidence and free from legal error. Even though the Superior Court reviewed the Insurance Commissioner's decision before this appeal, this Court does not review the decision of the intermediate court but, instead, directly examines the decision of the agency.[6]

### Enforceability of the Letter of May 7th

The letter of May 7th reads as follows:

Dear Mr. Butler:

Please be advised that Commissioner Williams has reviewed your file and the recommendations therein. Based upon the information and recommendations, Commissioner Williams has approved your application for reinstatement upon the following conditions.

The following course must be completed prior to license approval:

... Insurance Ethics & Consumer Relations....

The following seminar/course *must be* completed by November 1, 1993 in order to maintain your license:

[A list of two courses follows.]

To register, contact the referenced phone number. Any exam associated with the seminars/courses must be successfully completed and proof of completion sent directly to the attention of the Director of Licensing.

On May 10, 1993, Mr. Butler signed the following endorsement to the letter of May 7th:

I, <u>Gentry Butler</u> acknowledge receipt of this letter and understand that I must complete the Pictorial course in order to become licensed and complete, by November 1, 1993, the seminar and course mentioned on the attached letter in order to maintain said license.

I hereby agree to the terms and conditions set forth in the attached letter.

Violation of this agreement and the Delaware Insurance Code will result in penalties and permanent revocation of my license.

Mr. Reed testified that, when an agent's license has been suspended for one year or more, the agent must reapply for a license and retake the licensing exam. Then the Commissioner reviews the application and does one of the following: reinstates the license, denies reinstatement, or reinstates the license contingent upon the successful completion of conditions related to the reason for which the license initially was suspended.

In this case, the Commissioner, through Mr. Reed, reinstated Mr. Butler's license with conditions. The Commissioner argues that her authority to impose such conditions comes from several provisions of the Insurance Code. These statutes, in their current form,[7] are as follows:

---

missioner, or of a commissioner or department of insurance of another state. This language comes also from the July 1, 1996 amendment and is nearly identical to the previous § 1732 except that the word 'license' herein replaces the old phrase 'certificate of authority.'

**5.** *Butler v. Insurance Commissioner*, Del.Super., C.A. No. 95A–08–003 (Jan. 19, 1996) (ORDER).

**6.** *Stoltz Management Co., Inc. v. Consumer Affairs Board*, Del.Supr., 616 A.2d 1205, 1208 (1992).

**7.** Chapter 3 of the Insurance Code deals with the Office of Insurance Commissioner. Effective July 10, 1995, this chapter was rewritten and many provisions renumbered. 70 *Del.Laws*, c. 185. No substantive changes have been made in the current version relating to any provision applicable to this case. Accordingly, we will refer in this Opinion to the current provisions.

First, 18 *Del.C.* § 310(b) states, "The Commissioner shall have the powers and authority expressly vested by or reasonably implied from this title." Second, the Commissioner may delegate his or her powers to others in the Department by authority of 18 *Del.C.* § 309(a), (b):

(a) The Commissioner may delegate to the Commissioner's Deputy, examiner or an employee of the Department the exercise or discharge in the Commissioner's name of any power, duty or function, whether ministerial, discretionary or of whatever character vested in or imposed upon the Commissioner under this title.

(b) The official act of any such person acting in the Commissioner's name and by the Commissioner's authority shall be deemed to be the official act of the Commissioner.

Finally, 18 *Del.C.* § 312(a) states, "Orders and notices of the Commissioner shall be effective only when in writing signed by the Commissioner or by the Commissioner's authority."

The authority of the Commissioner to make rules and regulations is set forth in section 311, which, in turn, invokes the procedural requirements of the Administrative Procedures Act, 29 *Del.C.*, c. 101. Section 311 provides:

§ 311. **Rules and regulations; promulgation; violation.**

(a) The Commissioner may make reasonable rules and regulations necessary for, or as an aid to, the administration or effectuation of any provision of this title. No such rule or regulation shall extend, modify or conflict with any law of this State or the reasonable implications thereof.

(b) The Commissioner shall adopt and promulgate rules and regulations in accordance with the procedures set forth in the State Administrative Procedures Act, Chapter 101 of Title 29.

(c) Wilful violation of any such rule or regulation shall subject the violator to such suspension or revocation of certificate of authority or license, or to such administrative fine in lieu thereof, as may be applicable under this title, for violation of the provision to which such rule or regulation relates; but no penalty shall apply to any act done or omitted in good faith in conformity with any such rule or regulation, notwithstanding that such rule or regulation, after such act or omission, may be amended or rescinded or determined by judicial or other authority to be invalid for any reason.

The Commissioner's order dated July 12, 1995 which revoked Mr. Butler's license stated as grounds for revocation that Mr. Butler failed to comply with the conditions set forth in the "consent order" of the Commissioner dated May 10, 1993 (the date Mr. Butler signed the letter of May 7th). We therefore turn to the question whether the letter of May 7th constitutes a consent order of the Commissioner. The record in this case refers to the letter of May 7th in two ways: as a consent order, as stated on the order dated July 12, 1995 revoking Mr. Butler's license, and as an 'agreement' between the Department and Mr. Butler. We conclude that the latter characterization is the more apt.

18 *Del.C.* §§ 312(a) and (b) list the requirements for a consent order:

(a) Orders and notices of the Commissioner shall be effective only when in writing signed by the Commissioner or by the Commissioner's authority.

(b) Except as otherwise expressly provided by law as to particular orders, every order of the Commissioner shall state its effective date and shall concisely state:

(1) Its intent or purpose;

(2) The grounds on which based;

(3) The provisions of this title pursuant to which action is taken or proposed to be taken. . . .

The letter of May 7th does not purport to be an order, contains no effective date, no grounds upon which it is based, and no regulatory provisions pursuant to which it required Mr. Butler to take the courses prescribed. We therefore conclude that the letter of May 7th is not a consent order.

Mr. Butler argues that the failure of the letter of May 7th to conform to the standards

of a consent order is dispositive of the letter's unenforceability. We disagree. Orders are not the only enforceable writings of the Commissioner. The letter was signed with the Commissioner's approval by the Director of Licensing, an individual with the discretionary power to carry out the duties reasonably implied by the Insurance Code. One of those duties is to protect the insurance-buying public from persons the Department feels are not fit to hold an insurance license. Mr. Reed, exercising his discretionary power as Licensing Director, determined that Mr. Butler needed more ethics training before his license should be reinstated. The Commissioner approved Mr. Reed's recommendation.

▮▮▮▮ We acknowledge that the Commissioner is given broad discretionary powers over the issuance of insurance licenses.[8] Chapter 17 of the Insurance Code is the comprehensive embodiment of the licensing authority of the Commissioner. Section 1701, relating to the scope and intent of that chapter, demonstrates that chapter 17 is intended to occupy the field of insurance licensing. That section provides:

§ 1701. **Scope and intent of chapter.**

(a) This chapter shall govern the qualifications and procedures for granting licenses to agents, brokers, surplus lines brokers, consultants, fraternal representatives, adjusters, apprentice adjusters, property damage appraisers, apprentice property damage appraisers and temporary licensees. This chapter shall apply to all lines of insurance including, but not limited to, life, health, variable annuity and variable life, property, casualty, surety, title, credit, motor vehicle, travel, transportation and marine and to all types of insurers, whether operating on a mutual, stock, reciprocal, fraternal, group or other plan.

(b) This chapter shall establish the qualifications for granting licenses to professional insurance personnel; to establish the procedures to be followed in determining the initial and continuing qualifications for such personnel to provide definitions of their authorities, duties, responsibilities and prohibitions in a manner that will provide guidance to such personnel and control over such personnel by the Commissioner of Insurance for the benefit and protection of the citizens of the State.

Since this chapter occupies the field of insurance licensing, the authority of the Commissioner must be expressly provided or reasonably implied in the provisions of chapter 17.

▮▮▮▮ The Commissioner's discretionary powers must be accompanied by safeguards to protect against capricious or whimsical policy-making by the Department staff.[9] Accordingly, we hold that, where the Department cannot refer to a written regulation as policy adhered to uniformly throughout the Department, the Department cannot subject individual applicants to such a policy, especially when, as in this case, noncompliance is followed by the severe result of license revocation.

### *Drafting a Regulation Embodying a Policy*

▮▮▮▮ In keeping with the Department's important role of protecting the public and regulating the issuance of insurance licenses to those fit to transact insurance in the State of Delaware, nothing in this Opinion restricts the Commissioner from devising, after proper procedures are followed, a written set of reasonable rules to govern the reinstatement of licenses suspended for at least one year for ethics violations.

---

**8.** *Carroll v. Tarburton,* Del.Super., 209 A.2d 86, 90 (1965) ("if an administrative agency has a right to license, it usually has the additional right to attach conditions thereto and to revoke the license"). *Accord Formosa Plastics Corp. v. Wilson,* Del.Supr., 504 A.2d 1083 (1986) (the authority to grant a license includes the power of revocation whether it is expressly or impliedly reserved by statute).

**9.** *See Formosa Plastics,* 504 A.2d at 1089 (quoting *Joint Anti–Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 179, 71 S.Ct. 624, 652, 95 L.Ed. 817 (1951)) ("Although we recognize that broad and pervasive powers repose in the Secretary [of the Department of Natural Resources and Environmental Control], it is not to be overlooked that procedural safeguards and fairness must accompany their exercise. This is essential in marking the 'difference between rule by law and rule by whim or caprice.' ").

■ Those rules must be properly adopted, in written form, of general application and applied prospectively.[10] The Commissioner must follow the administrative procedural requirements governing the promulgation of regulations or policies. Likewise, action to be taken on the amendment or modification of a final order of the Commissioner must be taken fairly and in accordance with applicable statutes.[11]

### Conclusion

■ There does not exist substantial evidence in the record to support the Insurance Commissioner's characterization of the letter of May 7th as a consent order. Accordingly, Mr. Butler cannot be found in violation of a consent order which formed the basis for the revocation of his license by order dated July 12, 1995. We therefore reverse the decision of the Superior Court which upheld the revocation of Mr. Butler's license.

Moreover, the policy of prescribing course work for those whose licenses have been suspended for one year or more has not been committed to writing as a regulation or otherwise. It may well be a salutary policy. We do not decide that issue. We reverse on procedural and fairness grounds. We conclude, therefore, that the Insurance Department's general practice as applied in this case cannot be recognized as a rule, regulation, order, policy, law or bulletin of the Department.

Accordingly, the order of the Superior Court upholding the action of the Commissioner in revoking Mr. Butler's license is REVERSED.

10. How such a rule could apply, if at all, to Mr. Butler will have to await future developments. It would not be appropriate for us to speculate on the legal effect of such future developments.

11. *See, e.g.,* 29 *Del.C.* § 10128(e) ("Every final order may be amended or modified by the same

procedure used for the initial adoption of the order").