J-S36043-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHERYL L. BITNER, | : | |
| | : | |
| Appellant | : | No. 205 WDA 2015 |

Appeal from the Judgment of Sentence Entered September 2, 2014,
in the Court of Common Pleas of Westmoreland County,
Criminal Division, at No.: CP-65-CR-0003169-2013

BEFORE:    PANELLA, JENKINS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED AUGUST 21, 2015**

Cheryl L. Bitner (Appellant) appeals from the judgment of sentence entered on September 2, 2014, following her conviction for theft of property lost, mislaid, or delivered by mistake.[1]   In addition, Appellant's counsel seeks to withdraw from representation pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).   Upon review, we affirm the judgment of sentence and grant counsel's petition to withdraw.

On September 2, 2014, following a non-jury trial, Appellant was found guilty of the aforementioned crime as a result of an incident in which Appellant took a purse that had been mislaid in a McDonald's restaurant located in New Stanton, Pennsylvania.   The matter immediately proceeded

---

[1] 18 Pa.C.S. § 3924.

*Retired Senior Judge assigned to the Superior Court.

to sentencing, at which time the court sentenced Appellant to one year of probation and ordered Appellant to pay $165.24 in restitution plus costs. Appellant filed post-sentence motions on November 14, 2014, after the trial court granted Appellant's request for leave to do so *nunc pro tunc*. On January 6, 2015, the court issued an order denying Appellant's post-sentence motions and an accompanying opinion. Appellant timely filed a notice of appeal.[2] Counsel has filed with this Court a petition to withdraw and an ***Anders*** brief.

Before we consider the substance of this appeal, we must address counsel's compliance with ***Anders***:

> Direct appeal counsel seeking to withdraw under ***Anders*** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an ***Anders*** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.…
>
> ***Anders*** counsel must also provide a copy of the ***Anders*** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of ***Anders***, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with ***Anders*** or file an

---

[2] The trial court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and none was filed. On February 10, 2015, the court issued a decree stating that the reasons for its rulings could be found in its January 6, 2015 opinion and order as well as in the transcripts of the September 2, 2014 proceedings.

advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy **Anders**, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

**Commonwealth v. Wrecks**, 931 A.2d 717, 720-21 (Pa. Super. 2007) (citations omitted). Our Supreme Court has expounded further upon the requirements of **Anders**:

in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Based upon our examination of counsel's petition to withdraw and **Anders** brief, we conclude that counsel has substantially complied with the above requirements.[3] Once "counsel has met these obligations, 'it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous.'" **Commonwealth v. Flowers**, 113

---

[3] Appellant has not responded to counsel's petition to withdraw.

A.3d 1246, 1248 (Pa. Super. 2015) (quoting **Santiago**, 978 A.2d at 354 n.5).

In his brief, Appellant's counsel states two issues that might arguably support an appeal: (1) "Did the trial court err in its determination that the verdict below was supported by sufficient evidence?," and (2) "Did the trial court err in its determination that the verdict below was not against the weight of the evidence?" **Anders** Brief at 4.

We begin with Appellant's sufficiency challenge, mindful of our standard of review.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Harden***, 103 A.3d 107, 111 (Pa. Super. 2014) (citation omitted) (alterations in original).

The offense of theft of property lost, mislaid, or delivered by mistake is defined as follows:

A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of theft if, with intent to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to have it.

18 Pa.C.S. § 3924.

At the nonjury trial, the Commonwealth presented the testimony of Diane Kunkle and State Police Trooper Albert Miles. Ms. Kunkle testified that on May 10, 2013, she went to a McDonald's restaurant in New Stanton with her grandson. N.T., 9/2/2014, at 4-5. Ms. Kunkle explained that they ordered their food and a toy for her grandson. *Id.* at 5. Ms. Kunkle explained that she paid for the food and, because her grandson wanted the toy's packaging removed, she sat her black and brown leather pocketbook[4]

---

[4] Ms. Kunkle stated that her pocketbook contained approximately $229 in currency, gift cards, stamps, a debit card, and her driver's license. N.T., 9/2/2014, at 7-8, 11.

down to open the toy. *Id.* Then, she got the food and they sat down at a booth, leaving her pocketbook on the counter. *Id.* at 5-6. Ms. Kunkle realized that her pocketbook was missing approximately fifteen to twenty minutes later, when someone asked if she had gas money to spare while she was putting her grandson into the car seat to leave. *Id.* at 6.

Ms. Kunkle returned to the McDonald's and, after she and others searched the area without success, Ms. Kunkle asked the shift manager if she had "cameras that work." *Id.* at 6, 13. The shift manager responded affirmatively[5] and said that the pocketbook was removed from the counter. *Id.* at 6-7. At that point, Ms. Kunkle called the State Police, and a trooper was sent to the scene. *Id.* at 7-8. Ms. Kunkle explained that Trooper Miles returned the pocketbook to her later that evening, at which time she discovered that approximately $170.00 was missing. *Id.* at 8-9.

Trooper Miles testified that he was on duty on May 10, 2013, and he responded to the McDonald's at 5:25 p.m. for a dispatch in the nature of a stolen purse. *Id.* at 14-15. Trooper Miles met Ms. Kunkle at the scene and spoke to her about the incident. *Id.* at 15. Trooper Miles explained that the McDonald's employees told him that they knew the person who took the purse off of the counter because she worked at the motel across the street

_____

[5] The video surveillance from the McDonald's was admitted into evidence without objection as Commonwealth Exhibit 1, and it was played at trial. N.T., 9/2/2014, at 16-17.

and came to the McDonald's often. *Id.* at 15-16. Trooper Miles then went to the motel and obtained Appellant's name from the employees there. *Id.* at 15-17. Trooper Miles ran a PennDOT record check and police check and was able to view Appellant's license picture. *Id.* at 17. Trooper Miles stated that the picture on the license appeared to be the same person that took the pocketbook from the McDonald's countertop. *Id.* Trooper Miles eventually contacted Appellant via phone and they arranged for her to meet him at the police barracks in Greensburg.[6] *Id.* at 18.

Trooper Miles testified that Appellant arrived at the police barracks and had the brown and black pocketbook with her. *Id.* at 19. Additionally, she was wearing the same attire that was depicted in the video. *Id.* at 26. Upon examination, the trooper identified the pocketbook as Ms. Kunkle's, as it contained her license. *Id.* at 19. According to Trooper Miles, Appellant stated that she did take possession of the pocketbook at McDonald's, but that she was going to return it. *Id.* at 20. Appellant then stated that after she took the pocketbook, she went to her boyfriend's house, ate McDonald's, went to pay bills, went to the bank, and was going to go to her daughter's house. *Id.* at 20-21. When asked why she did not give the pocketbook to

---

[6] When arranging the meeting, Trooper Miles told Appellant to bring the purse, but Appellant responded by asking "what purse" and further stating that she did not know what he was talking about. N.T., 9/2/2014, at 18. When he repeated the request, she responded that she would see him at the station. *Id.*

an employee at McDonald's or call the police when she found the pocketbook, Appellant responded that she "made a bad decision." *Id.* at 20-21. Trooper Miles stated that he returned the pocketbook to Ms. Kunkle. *Id.* at 21.

Appellant also testified at the nonjury trial. Appellant confirmed that she worked at the motel across the street from the McDonald's, that she went "there for lunch every day," and that the employees know her by name. *Id.* at 32. Appellant testified that she did go to the McDonald's on the day in question and saw a wallet on the counter. *Id.* at 27-28. Appellant stated that the wallet remained there for a long time and, because she did not think the "young kids behind the counter … would do the right thing," she got the wallet to return it to the Greensburg police station, as she saw upon opening it that it belonged to a resident of Greensburg. *Id.* at 28-29, 31. Appellant testified that she was going to take the wallet to the police station while running other errands. *Id.* at 29, 31. Appellant explained that she received a call from Trooper Miles while she was out and then drove immediately to the police barracks. *Id.* at 30.[7] Appellant estimated that about an hour-and-a-half had elapsed from the time she left McDonald's to the time Trooper Miles called her. *Id.* at 31. Appellant

---

[7] Appellant testified that when Trooper Miles inquired about a purse, she denied finding a purse and stated "what purse" because she found a wallet, not a purse. *Id.* at 29-30.

denied taking anything from the wallet prior to going to the police station. *Id.* at 30.

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the evidence presented was sufficient to support Appellant's conviction. In so doing, we agree with the trial court's analysis of Appellant's claim:

> Facts proven at trial were clearly sufficient to establish [Appellant's] guilt. A video camera at McDonald[']s taped [Appellant] taking possession of the purse lying on the counter. She did not notify any personnel employed at McDonald[']s of the purse but instead took it to her home. Despite the presence of Ms. Kunkle's identification, she made no effort to contact her nor did she notify police that she found the purse. When contacted by the police she initially denied having it and when she ultimately returned it, money in the amount of [approximately] $170.00 was missing. Given these facts, the evidence was sufficient to establish a violation of [s]ection 3924.

Trial Court Opinion, 1/6/2015, at 3-4. Thus, Appellant's sufficiency challenge fails.

We now turn to Appellant's challenge to the weight of the evidence, which we review according to the following standard.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [factfinder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining

whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Karns***, 50 A.3d 158, 165 (Pa. Super. 2012) (quoting

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011))

(alterations in original).

In rejecting Appellant's weight claim, the trial court explained that the verdict "was not based on conjecture or contradictory facts, nor was there a serious miscarriage of justice. Rather, the evidence clearly established that [Appellant], knowing the purse belonged to another, confiscated it for her own use and failed [either to] turn it in or notify appropriate persons." Trial Court Opinion, 1/6/2015, at 4. Upon review, we discern no abuse of discretion in the trial court's determination. Thus, Appellant is not entitled to relief.

Based on the foregoing, we conclude that Appellant's issues challenging the sufficiency and weight of the evidence are frivolous. Moreover, we have conducted "a full examination of the proceedings" and conclude that "the appeal is in fact wholly frivolous." ***Flowers***, 113 A.3d at 1248. Thus, we affirm the judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2015