# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DELAWARE DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL, | ) ) ) ) | C.A. No. K19A-05-002 NEP In and for Kent County |
| Appellant (Appellee below), | ) ) ) ) | |
| v. | ) ) | |
| DELAWARE SOLID WASTE AUTHORITY; GREGGO & FERRARA, INC.; CONTRACTORS HAULING, LLC, | ) ) ) ) ) | |
| Appellees (Appellants below). | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Submitted: October 1, 2019
Decided: January 29, 2020

***Upon Appeal from the Environmental Appeals Board***
**AFFIRMED** in part, **REVERSED** in part, and **REMANDED**

William J. Kassab, Esquire, Deputy Attorney General, Department of Justice, *Attorney for Appellant.*

Michael W. Teichman, Esquire, Elio Battista, Jr., Esquire, and Kyle F. Dunkle, Esquire, Parkowski Guerke & Swayze, P.A., *Attorneys for Appellee Delaware Solid Waste Authority.*

Jeffrey M. Weiner, Esquire, Law Offices of Jeffrey M. Weiner PA, *Attorney for Appellees Greggo & Ferrara, Inc., and Contractors Hauling, LLC.*

**Primos, J.**

Before the Court is the appeal of the Department of Natural Resources and Environmental Control (hereinafter "DNREC") from the decision of the Environmental Appeals Board (hereinafter the "Board") reversing the Penalty Order of the Secretary of DNREC (hereinafter the "Secretary") entered against Delaware Solid Waste Authority (hereinafter "DSWA"), and affirming in part and remanding the Penalty Order of the Secretary entered against Greggo & Ferrara, Inc. (hereinafter "G&F"), and Contractors Hauling, LLC (hereinafter "CH"). For the reasons explained herein, the decision of the Board is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.

## I.    FACTS

DSWA operates three waste transfer stations in Delaware. These stations receive municipal solid waste from public and private sources, providing a local destination where one may take waste, rather than traveling to a landfill site that is often farther away than a transfer station. Waste received at a transfer station is collected and subsequently transported to a landfill.

The waste transfer station of interest in the present case is DSWA's Pine Tree Corners Transfer Station (hereinafter "PTCTS"), located near Townsend, Delaware. Waste from PTCTS is taken to DSWA's Central Solid Waste Management Center (hereinafter "CSWMC") landfill near Sandtown, Delaware. PTCTS is subject to DNREC permits, one of them being permit SW-06/04. Under PTCTS Permit SW-06/04 Condition III.B.2 (hereinafter "Condition III.B.2"), DSWA must submit an annual report by March 1 listing the transporters that hauled waste to or from PTCTS the previous reporting year.[1] A second permitting requirement, PTCTS Permit SW-06/04 Condition II.I.2 (hereinafter "Condition II.I.2"), provides as follows:

---

[1] Condition III.B.2 provides, in relevant part, as follows: "No later than March 1st each year, the DSWA shall submit an annual report to the DNREC. This annual report shall summarize Transfer

> All vehicles transporting waste from the Transfer Station shall have a valid solid waste transporters permit issued by the DNREC. In their contracts with transporters hauling waste from the Transfer Station, the DSWA shall stipulate that the contractor maintain a valid solid waste transporter permit issued by the DNREC. DSWA shall investigate and determine the current validity of the permit if it has reason to suspect the permit is not valid. All vehicles transporting waste collected by the HHW collection program from the Transfer Station shall have a valid hazardous waste transporters permit issued by the DNREC.

In July 2017, DSWA contracted with a private entity, G&F, whereby G&F was to operate PTCTS.[2] In order to enter this contract, G&F had to provide DSWA with a copy of G&F's relevant DNREC-issued permits. G&F commenced operating PTCTS on or about September 1, 2017, and at some point in September 2017, G&F enlisted its affiliate, CH, as a subcontractor to haul waste out of PTCTS.

On or about June 14, 2018, Mr. Michael D. Parkowski, a senior-level employee of DSWA, received information indicating that a vehicle leaving PTCTS did not appear to have a valid DNREC-issued solid waste transporters permit. On or about the same day, Mr. Justin Wagner, a facility manager at PTCTS, received information that G&F may have been using vehicles belonging to CH to transport solid waste out of PTCTS. Upon further investigation, DSWA confirmed that G&F had been using CH vehicles to transport waste out of PTCTS.[3]

---

Station operations for the previous year and include . . . [a] list of transporters that hauled waste to and from the facility during the year covered by the report."

[2] DSWA's remaining duty, as owner of PTCTS, was to operate the scale house in which trash is weighed before entering or leaving PTCTS.

[3] DSWA claims that, prior to this point, it was unaware that G&F had enlisted CH as a subcontractor to haul solid waste out of PTCTS. Whether this was the first time that DSWA learned of this fact is irrelevant to the Court's decision.

On July 25, 2018, Officer Austin Tyler, a DNREC enforcement official, stopped a vehicle owned by CH that was carrying solid waste from PTCTS. The vehicle did not possess a proper DNREC-issued solid waste transporters permit, in violation of 7 *Del. C.* § 6003.[4] After this incident, G&F engaged a third party to carry waste from PTCTS until CH received a valid DNREC-issued solid waste transporters permit.

## II. PROCECURAL POSTURE

On September 21, 2018, DNREC's Solid and Hazardous Waste Management Section sent a Notice of Violation to DSWA citing a violation of Condition II.I.2 for allowing vehicles to carry solid waste out of PTCTS without a valid permit. DSWA also received a notice of violation of Condition III.B.2 and CSWMC Permit Condition V.B.3 (hereinafter "Condition V.B.3")[5] for failing to include CH in its annual reports.

On November 28, 2018, DNREC issued three Secretary's Orders finding violations pursuant to 7 *Del. C.* Chapter 60[6] and 7 *Del. Admin. C.* § 1301. In Order No. 2018-WH-0066, the Secretary found that DSWA had violated Condition II.I.2 because it had failed to ensure that all vehicles transferring solid waste from PTCTS possessed valid solid waste transporter permits. Further, the Secretary found that DSWA had violated Conditions III.B.2 and V.B.3 for omitting CH from its annual

---

[4] 7 *Del. C.* § 6003(a)(4) provides, in relevant part, as follows: "No person shall, without first having obtained a permit from the Secretary, undertake any activity . . . [i]n a way which may cause or contribute to the . . . transportation . . . of solid wastes, regardless of the geographic origin or source of such solid wastes . . . ."

[5] Condition V.B.3 provides, in relevant part, as follows: "No later than April 30th of each year, the DSWA shall submit an annual report and include the following information[:] . . . [a] list of transporters that hauled waste to or from the facility."

[6] 7 *Del. C.* § 6005(b) prescribes penalties for violations not only of applicable statutory and regulatory provisions, but of permit conditions issued in accordance with those regulations. *See* 7 *Del. C.* §§ 6003(c), 6005(b).

reports. The Secretary assessed an administrative penalty of $18,174.80 pursuant to 7 *Del. C.* § 6005(b)(3)[7] and costs of $1,198.80 pursuant to 7 *Del. C.* § 6005(c) against DSWA.[8]

In Order No. 2018-WH-0067, the Secretary found that G&F had violated 7 *Del. Admin. C.* § 1301-7.1.7[9] because it had hired a subcontractor that did not hold a permit for the transportation of solid waste. The Secretary assessed an administrative penalty of $14,800.00 pursuant to Section 6005(b)(3) and costs of $2,126.48 pursuant to Section 6005(c) against G&F.

In Order No. 2018-WH-0068, the Secretary found that CH had violated 7 *Del. C.* § 6003(a)(4)[10] and 7 *Del. Admin. C.* § 1301-7.1.1[11] because it had transported solid waste without a permit. The Secretary assessed an administrative penalty of $16,630.00 pursuant to Section 6005(b)(3) and costs of $2,126.48 pursuant to Section 6005(c) against CH.

DSWA, G&F, and CH each filed a Notice of Appeal to the Board on December 19, 2018, challenging the Secretary's Orders. On February 12, 2019, the Board held an evidentiary hearing on the appeals, during which it heard testimony and reviewed evidence.[12]

---

[7] 7 *Del. C.* § 6005(b)(3) provides, in relevant part, as follows: "In his or her discretion, the Secretary may impose an administrative penalty of not more than $10,000 for each day of violation."

[8] 7 *Del. C.* § 6005(c)(1) provides, in relevant part, as follows: "Whenever the Secretary determines that any person has violated this chapter, or a rule, or regulation, or condition of a permit issued pursuant to § 6003 of this title, or an order of the Secretary, said person shall be liable for all expenses incurred by the Department . . . ."

[9] 7 *Del. Admin. C.* § 1301-7.1.7 states as follows: "Permitted solid waste transporters shall not use agents or subcontractors who do not hold permits for transporting solid waste."

[10] *Supra* note 4.

[11] 7 *Del. Admin. C.* § 1301-7.1.1 states, in relevant part, as follows: "No person shall transport solid waste, without first having obtained a permit from [DNREC], unless specifically exempted by these Regulations."

[12] The Secretary's three orders were combined into one appeals hearing pursuant to an agreement among the parties at a prehearing conference held on January 18, 2019.

On May 13, 2019, the Board issued a unanimous written opinion overturning the Secretary's decisions in part and affirming them in part. Specifically, the Board held that the Secretary's decision that DSWA had violated Condition II.I.2 was erroneous because Condition II.I.2 was invalid, and that DSWA had not violated Conditions III.B.2 and V.B.3 because it had no knowledge that G&F was using vehicles owned by an affiliate until after the annual report was filed. Further, the Board affirmed the Secretary's conclusions that G&F and CH had violated statutory and regulatory provisions regarding transport of solid waste without a permit, but reversed the Secretary's penalty assessments against them, holding that G&F and CH's violations were excused. The Board remanded the Secretary's orders regarding G&F and CH, instructing the Secretary to rescind the penalties and costs because the violations were due to "understandable oversight" and "an innocent lack of communication."[13] DNREC filed a timely Notice of Appeal to this Court on May 14, 2019, challenging the Board's decision in all respects, except for its finding that G&F and CH had violated Delaware environmental statutes and regulations.

## III.  THE PARTIES' CONTENTIONS

*DNREC*

DNREC brings several arguments on appeal. Generally, DNREC argues that the Board made an error of law in holding that it (*i.e.*, the Board) had jurisdiction to review the Secretary's cost-recovery decisions, because such decisions may only be reviewed by the Secretary or the Superior Court pursuant to 7 *Del. C.* § 6005(c).[14]

---

[13] Bd. Order at 11-12 (May 13, 2019).

[14] 7 *Del. C.* § 6005(c)(2) states, in relevant part, as follows: "In the event the liable person desires to challenge the detailed billing submitted by the Secretary, such person shall, within 20 days of receipt of the detailed billing request an administrative hearing before the Secretary. . . . The Secretary shall make findings of fact based on the record, and enter an order which shall contain reasons supporting the decision. An appeal of the decision of the Secretary may be perfected to Superior Court within 30 days of the decision of the Secretary."

DNREC also argues that the Board committed reversible error when it held Condition II.I.2 invalid. DNREC argues that Condition II.I.2 was a valid permitting condition because it complied with 7 *Del. C.* § 6003(c).[15] Moreover, DNREC argues that Condition II.I.2 was not an unconstitutional delegation of agency authority to a private entity because it merely required DSWA to comply with statutory law and did not require DSWA to take civil or criminal action against a party that had allegedly violated a permitting requirement.[16]

DNREC further argues that the Board erred when it found that DSWA had not violated Conditions III.B.2 or V.B.3. DNREC claims that the Board made a legal error by finding implicitly that a party that violates 7 *Del. C.* § 6003(c) must have intended to do so in order to face consequences for that violation. According to DNREC, whether DSWA intended to violate Conditions III.B.2 and V.B.3 is irrelevant because both of these permitting requirements invoke strict liability. Therefore, according to DNREC, DSWA's knowledge of whether it was violating Conditions III.B.2 and V.B.3 is irrelevant.

Lastly, DNREC argues that the Board committed reversible error in its decision to set aside the penalties and costs that the Secretary had imposed upon G&F and CH. DNREC argues that this decision was incorrect because the Board had erroneously inserted a state-of-mind element into 7 *Del. C.* § 6005.

## DSWA

DSWA argues that the issue of whether the Board had jurisdiction to review the Secretary's cost-recovery decision is moot because the Board found that DSWA

---

[15] 7 *Del. C.* § 6003(c) provides that "[t]he Secretary shall grant or deny a permit required by subsection (a) or (b) of this section in accordance with duly promulgated regulations . . . ."

[16] DNREC also argues that the Board's decision is invalid because it failed to explain how it reached its conclusion regarding Condition II.I.2. Whether this is the case is irrelevant because, as explained *infra*, the Court's review of this issue is *de novo*.

had not committed any violations. As such, according to DSWA, all outstanding penalties and costs that the Secretary imposed upon DSWA were extinguished.

DSWA also argues that the Board concluded properly that Condition II.I.2 was unlawful, since it lacks a basis in regulation, it is unconstitutionally vague and unreasonable, and it is an unconstitutional delegation of agency power to a private entity.

DSWA then argues that the issue of whether it is strictly liable for its violation of Conditions III.B.2 and V.B.3 is moot because the Board properly held that DSWA had not violated these Conditions of the applicable permits. Further, DSWA argues that it cannot be liable for a violation of which it was unaware.

### *G&F and CH*

G&F and CH argue that the Board did not err as a matter of law in concluding that it had jurisdiction to review the Secretary's cost-recovery decisions, because the Secretary failed to submit a "detailed billing of expenses," and thus the process enumerated in 7 *Del. C.* § 6005(c)(1) was never activated. G&F and CH further argue that both the ambiguous language of the statute and the language regarding appeal rights in the Secretary's order allow an appeal of the cost-recovery decisions to the Board.

Next, G&F and CH argue that the Board did not err in rescinding the penalties imposed upon them, as the statute pursuant to which the Secretary imposed the penalties is not one of strict liability. Thus, G&F and CH argue that they are absolved from the fiscal penalties and costs because they did not intend to commit the violations.

## IV.   STANDARD OF REVIEW

On appeal from a decision of the Board, this Court must determine whether the decision is supported by substantial evidence and free from legal error.[17] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18]  If the Board's decision is free from legal error and supported by substantial evidence, it must be affirmed.[19]  The Court may "affirm, reverse, or modify" the Board's decision.[20]

The party challenging the Board's decision bears the burden of proof.[21] Questions of law are reviewed *de novo*.[22]  Moreover, a *de novo* standard of review applies to judicial review of an agency's interpretation of a statute that was administered by the agency.[23]

Here, all arguments raised on appeal are questions of law.  Moreover, the crux of the arguments involves the agency's interpretation of various statutes and regulations.  Therefore, the Court will conduct a *de novo* review of the Board's decisions.

---

[17] *Dep't of Nat. Res. and Envtl. Control v. McGinnis Auto & Mobile Home Salvage*, 2019 WL 851935, at *4 (Del. Super. Feb. 21, 2019); *Tulou v. Raytheon Serv. Co.*, 659 A.2d 796, 802 (Del. Super. 1995).

[18] *Motiva Enter. v. Sec'y of Dept. of Nat. Res. & Envtl. Control*, 745 A.2d 234, 242 (Del. Super. 1999).

[19] *Id.*

[20] *Id.*

[21] *Gaskill v. State*, 2018 WL 3213782, at *1 (Del. Super. June 29, 2018).

[22] *McGinnis Auto*, 2019 WL 851935, at *4.

[23] *Pub. Water Supply Co. v. DiPasquale*, 735 A.2d 378, 379 (Del. 1999) (remanding case to Superior Court with instruction that Superior Court apply *de novo* standard of review to agency's interpretation of statute, rather than defer to agency's interpretation).

## V.   DISCUSSION

The issues before the Court are as follows:

A. Whether the Board properly reviewed the Secretary's assessment of costs against DSWA, G&F, and CH.

B. Whether the Board erred in determining that Permit Condition II.I.2 is invalid.

C. Whether the Board erred in determining that the Secretary had improperly found DSWA in violation of Conditions III.B.2 and V.B.3.

D. Whether the Board erred in determining that the assessments against G&F and CH were improper.

### A. The Secretary's impositions of costs were not properly before the Board on appeal.

As explained *supra*, the Secretary's violation orders assessed both administrative penalties pursuant to Section 6005(b)(3), and costs pursuant to Section 6005(c), against the appellees.[24] Section 6005(c) authorizes the Secretary to assess expenses incurred by the Department in "abating [a] violation," "[c]ontrolling a pollution incident related to the violation," or "[c]leanup and restoration of the environment," or "costs incurred by the Department in recovering such expenses."[25] However, Section 6005(c) also requires the Secretary to "submit a detailed billing of expenses to the liable person."[26]

---

[24] In each of the three orders, the administrative penalty represented the lion's share of the total amount assessed.

[25] 7 *Del. C.* § 6005(c)(1).

[26] *Id.*

10

Here, it is undisputed that the Secretary never submitted detailed billings for the costs assessed in the orders.[27] Indeed, DNREC concedes that it cannot recover the costs assessed in the absence of a detailed billing, and that it is "not formally seeking cost recovery from the Appellees at this time."[28] Therefore, the Secretary's cost recovery decisions were not properly before the Board on appeal, and the Board did not have authority to review them. Furthermore, this Court need not, and will not, reach the issue of whether the Board would have had jurisdiction to review the Secretary's cost recovery decisions had the Secretary issued detailed billings to the Appellees prior to their appeals to the Board.

### B. Permit Condition II.I.2 is invalid because it is unconstitutionally vague.

In Order No. 2018-WH-0066, the Secretary found that DSWA had violated PTCTS Permit Condition II.I.2 by "fail[ing] over the course of several months to ensure that all vehicles that transfer solid waste from its PTCTS possess a valid Delaware solid waste transporter permit . . . ."[29] The Board reversed the Secretary's decision, finding that "[the] facility permit condition requiring that DSWA investigate and assure the existence and validity of DNREC transporter permits is unlawful."[30]

DSWA argues that this Court should affirm the Board's holding on this matter because Condition II.I.2 is invalid. Specifically, DSWA argues that Condition II.I.2

---

[27] *See* DNREC Opening Br. at 15 n. 40 (the Secretary "has not provided [DSWA, G&F, and CH] the detailed billing . . . ."); G&F and CH Answering Br., p. 12 ("the Secretary never submitted a 'detailed billing of expenses to the liable person,' . . . as required by §6005(c)(1) . . . .").

[28] DNREC Opening Br. at 15 n. 40; *see also Garvin v. Booth*, 2019 WL 3017419, at *6 (Del. Super. July 10, 2019) ("Section 6005(c) requires a Secretary seeking damages under that subsection to submit a detailed billing of expenses to the 'liable person.'") (citing 7 *Del. C.* § 6005(c)(1)).

[29] Secretary's Order No. 2018-WH-0066, at 5.

[30] Bd. Order at 10.

has no basis in duly promulgated regulations, that it is unconstitutionally vague and unreasonable, and that it unconstitutionally delegates agency authority to a private entity.

### 1. Condition II.I.2 need not have an explicit regulatory antecedent to comply with 7 Del. C. § 6003(c).

Under 7 *Del. C.* § 6003(c), "[t]he Secretary shall grant or deny a permit required by subsection (a) or (b) of this section *in accordance with duly promulgated regulations . . . .*"[31] Here, the issue is whether the phrase "in accordance with" requires DNREC to impose permit conditions that have explicit regulatory antecedents, or whether DNREC may impose conditions without explicit regulatory antecedents provided that the conditions are reasonable.

In *Formosa Plastics Corp. v. Wilson*, the Delaware Supreme Court held that the Secretary had the authority to place "reasonable conditions" upon the issuance of permits, and to revoke them when the conditions were violated, despite the absence of an "express statutory right" to do so.[32] In support of this conclusion, the Court construed the controlling statute, 7 *Del. C.* § 6005(a), "as the imposition of an emphatic duty and a conferral of all necessary concomitant powers to give full force and effect to the clear legislative mandate of the [Environmental Control] Act."[33] The Court also stated that "[a] further ground for our conclusion . . . is [the Secretary's] unquestioned power to impose *reasonable conditions* upon [the] issuance [of a permit]."[34]

---

[31] 7 *Del. C.* §6003(c) (emphasis supplied).

[32] 504 A.2d 1083, 1088-89 (Del. 1986).

[33] *Id.* at 1088.

[34] *Id.* at 1089 (emphasis supplied). Although this holding is *dicta*, since the issue in *Formosa* was whether the Secretary had the authority to *revoke* a permit, not whether the Secretary had the authority to impose conditions upon their issuance, the Court nonetheless finds the holding persuasive.

Accordingly, this Court finds unpersuasive DSWA's argument that Condition II.I.2 is invalid because it has no explicit regulatory antecedent. To hold otherwise would hinder DNREC's ability to "preserve the land, air and water resources of the State."[35] Therefore, the Court finds that reasonable permit conditions may be imposed by DNREC even if they do not have explicit antecedents in the applicable regulations.[36]

### 2. Condition II.I.2, however, is unconstitutionally vague.

DSWA argues that Condition II.I.2 is unconstitutionally vague and unreasonable and therefore invalid. In support of this argument, DSWA cites *Globe Liquor Co. v. Four Roses Distillers Co.*[37] and *Wien v. State.*[38] DSWA points out that DNREC has interpreted DSWA's requirements under the Condition differently over the course of this litigation, variously requiring DSWA to "*ensure* that all vehicles transporting solid waste from the facility *possess and maintain* a valid transporter permit from the DNREC,"[39] "*ensure* that all vehicles that transfer solid waste from its [transfer station] *possess* a valid Delaware solid waste transporter permit,"[40] or "inquir[e] with the Department."[41]

In *Globe Liquor*, the Delaware Supreme Court explained that a statute imposing a standard of conduct, and holding an individual responsible for a breach of that standard, "must define the conduct with sufficient particularity to enable him

---

[35] 7 *Del. C.* § 6020.

[36] *Cf. Stephen C. Glenn, Inc. v. Sussex Cty. Council*, 532 A.2d 80, 83 (Del. Ch. 1987) (holding that Sussex County Council could include special condition in conditional use permit "even if the special condition imposed is not specifically set forth in the Sussex County Zoning Ordinance" if special condition, *inter alia*, was reasonably necessary to protect public health, safety, and welfare).

[37] 281 A.2d 19 (Del. 1971).

[38] 882 A.2d 183 (Del. 2005).

[39] DNREC-Issued Notice of Violation to DSWA, No. 18-SW-58, at 2 (emphasis supplied).

[40] Secretary's Order No. 2018-WH-0066, at 5 (emphasis supplied).

[41] DNREC Opening Br., 16.

to make his conduct conform."[42] In that vein, the Court in *Wien* held that "[a] statute is void for vagueness if 'it fails to give a person of ordinary intelligence fair notice that his contemplated behavior is forbidden by the statute, or if it encourages arbitrary or erratic enforcement.'"[43]

Here, the Court finds that the language of Condition II.I.2 is unconstitutionally vague, and specifically that it both fails to give notice of behavior forbidden by the Condition, and lends itself to arbitrary or erratic enforcement. The first sentence of the Condition simply makes a statement that appears consistent with the regulatory scheme, *i.e.*, that all vehicles transporting waste from PTCTS must have valid DNREC-issued permits. The second sentence then imposes an affirmative obligation upon DSWA, namely, that it stipulate in its contracts with transporters that they maintain valid permits. The third sentence imposes an additional requirement, *i.e.*, that DSWA investigate and determine the validity of a permit if DSWA has reason to suspect its invalidity. Finally, the fourth sentence provides that vehicles transporting waste collected by the HHW collection program must also have valid permits.

The only obligations explicitly imposed upon DSWA by the Condition are (1) the requirement to stipulate in contracts that transporters maintain valid permits, and (2) the obligation to investigate and determine permit validity if DSWA suspects invalidity. However, DNREC appears to expect something more from DSWA than those obligations, *i.e.*, that DSWA *ensure* that all vehicles transporting waste from PTCTS possess valid permits.[44]

---

[42] 281 A.2d at 22.

[43] 882 A.2d at 187 (quoting *State v. Baker*, 720 A.2d 1139, 1147-48 (Del. 1998) (citing *Sanders v. State*, 585 A.2d 117, 127 (Del. 1990))).

[44] *See* Order No. 2018-WH-0066 at 5 ("DSWA's failure over the course of several months to ensure that all vehicles that transfer solid waste from its PTCTS possess a valid solid waste transporter permit is a violation of Condition II.I.2 of the solid waste permit for PTCTS.").

However, if the first sentence of the Condition does indeed require – as DNREC appears to contend – that DSWA ensure that all transporters have valid permits, then the third sentence of the Condition is both superfluous and inconsistent with that requirement. The third sentence is clearly conditional, *i.e.*, it requires DSWA to "investigate and determine" the validity of a permit *only* if it has reason to suspect that the permit is invalid. It would make no sense to require DSWA to investigate only if it suspected permit invalidity if DSWA bore responsibility for permit invalidity *regardless* of any suspicions it might or might not have. Given the language of the third sentence, DSWA's representatives might reasonably assume that DSWA would be liable for violating the Condition only if its agents had reason to suspect the invalidity of contractor permits. The provision might also lead to arbitrary or erratic enforcement: one DNREC official might find DSWA in violation if any transporter had an invalid permit, while another might find a violation only if DSWA had reason to suspect invalidity.

For these reasons, the Court agrees with DSWA that Condition II.I.2 is void for vagueness. Therefore, the Board's decision overturning the Secretary's finding of a violation of Condition II.I.2 is affirmed, although on other grounds than those upon which the Board relied.[45] In addition, given this decision, the Court need not, and will not, consider DSWA's assertion that Condition II.I.2 is invalid because it improperly delegates DNREC's enforcement authority to DSWA.

---

[45] The Board found the Condition invalid because "DSWA has no authority to monitor or enforce DNREC permits and . . . DNREC has no authority to impose such a condition." Bd. Order at 10.

## C. The Board erred in determining that DSWA had not violated Permit Conditions III.B.2 and V.B.3.

### 1. The Board properly reviewed the Secretary's decision on this issue.

DNREC argues that when the evidence supports the Secretary's decision, the Board cannot substitute its judgment for that of the Secretary. DSWA responds that pursuant to *Tulou v. Raytheon Service Co.*,[46] the Board had the authority to review and overrule the Secretary's decision.

In *Tulou*, this Court reviewed "the function of both the Secretary and the Board, primarily the Board's review of decisions of the Secretary and their relationship to each other."[47] In that case, the Secretary had held a hearing on a permit application, during which the Secretary heard testimony and reviewed a substantial quantity of evidence.[48] The Secretary denied the permit application in part and granted it in part.[49] The permit applicant appealed the Secretary's decision to the Board.[50] The Board conducted a hearing and heard evidence from a witness whom the Secretary had barred from testifying during the previous hearings.[51] The Board, relying on the aforesaid witness's testimony, reversed and remanded the Secretary's decision.[52]

On appeal, the Secretary argued that the Board had committed an error of law by, *inter alia*, substituting its judgment for that of the Secretary and failing to give any deference to the Secretary's expertise.[53] Given the fact that Secretarial decisions

---

[46] 659 A.2d 796 (Del. Super. 1995).
[47] *Id.* at 798.
[48] *Id.* at 798-801.
[49] *Id.* at 800.
[50] *Id.* at 801.
[51] *Id.*
[52] *Id.*
[53] *Id.* at 802.

are to be "given some deference by the Board," the court in *Tulou* recognized that the crucial issue before it was the appropriate level of deference to be afforded a decision of the Secretary by the Board.[54] The Court held that the Board may give less deference to the Secretary "when the initial full adversarial hearing is before the Board."[55] This Court finds that holding, although *dicta*,[56] to be persuasive. Moreover, the holding applies to both Secretarial permit decisions and enforcement decisions.[57]

Here, the initial adversarial hearing was before the Board. Thus, the Board was not required to provide "explicit deference to the Secretary's expertise,"[58] and the Board did not commit an error of law in reviewing the Secretary's decision that DSWA had violated Conditions III.B.2 and V.B.3.

### 2. DSWA is strictly liable for violating Conditions III.B.2 and V.B.3.

DNREC argues that the Board committed an error of law in reversing DSWA's permit violations based on a lack of knowledge, as 7 *Del. C.* § 6005(b) is a strict liability statute. DSWA responds, pursuant to *Dover Products Co. v. Olney*,[59] that it cannot be held strictly liable for a violation of which it was unaware.

In the lower court decision in *Olney*, this Court noted that an unknown third party had dumped approximately ten tons of chicken carcasses at Dover Products's

---

[54] *Id.* at 804.

[55] *Id.* at 805.

[56] The holding is *dicta* because the Court in *Tulou* was reviewing the Board's decision after a *second* adversarial hearing, *i.e.*, a first hearing had been held before the Secretary and a second hearing had been held before the Board.

[57] *Tulou*, 659 A.2d at 805.

[58] *Id.*

[59] 428 A.2d 18 (Del. 1981).

facility.[60] DNREC cited Dover Products for violating Regulation XIX, which provides that "[n]o person shall cause or allow the emission of an odorous air contaminant such as to cause a condition of air pollution," despite the fact that Dover Products had not authorized the dumping, nor did it know who had performed the dumping.[61] This Court held that Dover Products was strictly liable pursuant to 7 *Del. C.* § 6005(b), which states in relevant part that "[w]hoever violates this chapter or any rule or regulation promulgated thereunder, or any condition of a permit issued pursuant to § 6003 of this title . . . shall be punishable," and noted that "nowhere [in Section 6005] is there an express requirement that the State prove [the violation was committed] knowingly or intentionally."[62] Indeed, "such proof of guilty knowledge or intent would be extremely difficult and such a requirement would render ready enforcement on an extended scale almost impossible."[63]

On appeal, the Supreme Court reviewed the issue of whether this Court had erred in holding Dover Products strictly liable under 7 *Del. C.* § 6005.[64] The Supreme Court held that "[e]ven assuming that we agree with the Superior Court's well-supported conclusion that [section] 6005 is a strict liability statute, Dover [Products] is not liable in this case because it neither caused nor allowed, expressly or implicitly, the initial act causing the air pollution."[65]

This Court's holding in *Olney* that 7 *Del. C.* § 6005(b) is a strict liability statutory provision remains persuasive despite the fact that the Supreme Court reversed on factual grounds, *i.e.*, because air pollution resulting from an

---

[60] *Olney v. Dover Products Co.,* 1980 WL 332956, at *1 (Del. Super. Aug. 13, 1980), *rev'd, Dover Products,* 428 A.2d 18.

[61] *Olney,* 1980 WL 332956, at *1; *Dover Products,* 428 A.2d at 18-19.

[62] *Olney,* 1980 WL 332956, at *2.

[63] *Id.; see also Wilson v. Chem-Solv, Inc.,* 1988 WL 109375, at *1 (Del. Super. Oct. 14, 1988) ("Section 6005 is a strict liability statute . . . .").

[64] *Dover Products,* 428 A.2d at 18.

[65] *Id.* at 19.

unauthorized dumping was a violation that Dover Products had "neither caused nor allowed."[66] Here, by contrast, DSWA "caused" the violation by failing to list all transporters that had hauled waste to and from its facilities during the previous year in accordance with Conditions III.B.2 and V.B.3. The fact that DSWA did not *know* that CH was hauling waste to and from its facilities is therefore irrelevant, since DSWA, regardless of its knowledge or lack thereof, was responsible for relaying this information to DNREC. Therefore, the Supreme Court's holding in *Dover Products*, where the defendant was completely detached from the violation at issue, is inapplicable to the present case.

As noted *supra*, the lower court in *Olney* saw that insertion of a *mens rea* requirement into Section 6005(b) would render enforcement virtually impossible.[67] This logic applies with equal force to the reporting requirements at hand. Essentially, it would hamstring DNREC's enforcement efforts to require that DNREC prove that DSWA knew about CH and its permit status before finding DSWA in violation of Conditions III.B.2 and V.B.3, particularly where DNREC's regulations themselves require that permittees file annual reports listing the commercial haulers that hauled waste to and from their facilities during the preceding year.[68]

The Court finds that because Section 6005(b) provides for strict liability and because Conditions III.B.2 and V.B.3 are valid "condition[s] of a permit issued pursuant to § 6003,"[69] and because DSWA violated these Conditions, the Board

---

[66] *Id.*

[67] *Olney*, 1980 WL 332956, at *2.

[68] *See* 7 *Del. Admin. C.* § 1301-10.5.4.1.2 ("The permittee shall submit to the Department on an annual basis a report summarizing facility operations for the preceding calendar year. . . . The report shall include . . . [a] complete list of commercial haulers that hauled waste to or from the facility during the year covered by the report.").

[69] 7 *Del. C.* § 6005(b).

erred in finding that DSWA had not violated these Conditions. The Court will remand this matter to the Board for further proceedings consistent with this finding, and particularly to consider whether the administrative penalties imposed by the Secretary were appropriate.

### D. The Board erred in determining that G&F and CH should be relieved of any monetary penalties.

As explained *supra*, with regard to Secretary's Order No. 2018-WH-0067, the Board found that G&F had violated 7 *Del. Admin. C.* § 1301-7.17 by using a transporter that did not hold a permit for transporting solid waste, but the Board further found that the violation was the result of "understandable oversight,"[70] and concluded that, in view of this as well as the absence of harm, no penalty or cost recovery should be imposed. Similarly, with regard to Secretary's Order No. 2018-WH-0068, the Board found that CH had violated 7 *Del. C.* § 6003 by transporting solid waste without first obtaining a permit to do so, but the Board further found that the violation "was the result of an innocent lack of communication between G&F and CH,"[71] and concluded that, in view of this as well as the absence of harm, no penalty or cost recovery should be imposed.

For the reasons discussed *supra*, the Court finds that the Board properly reviewed the Secretary's imposition of administrative penalties,[72] but that the Secretary's imposition of costs was not properly before it because the Secretary had not issued a detailed billing statement for those costs.

Turning to the merits, for the same reasons that the Court determined that DSWA is strictly liable for its violations of Permit Conditions III.B.2 and V.B.3, the

---

[70] Bd. Order at 11.

[71] *Id.* at 12.

[72] *See Tulou*, 659 A.2d at 805 ("where the initial full adversarial hearing is before the Board . . . . there is less apparent need for explicit deference to the Secretary's expertise.").

Court finds that G&F and CH are strictly liable for their violations of applicable regulatory and statutory provisions connected with CH's transport of solid wastes without a permit.[73] Therefore, given the directive of Section 6005(b) that such strict liability violations "shall be punishable" by the penalties set forth in that subsection, the Court is concerned that the Board's conclusion that no penalties were appropriate was not well-considered. For these reasons, the Court will remand the matter of the appropriate administrative penalties to be assessed against G&F and CH to the Board for further proceedings consistent with this opinion.

## VI.    CONCLUSION

**WHEREFORE**, for the foregoing reasons, the decision of the Environmental Appeals Board is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** as follows:

1. The Board's determination that Condition II.I.2 is invalid is **AFFIRMED**.

2. The Board's determination that DSWA did not violate Permit Conditions III.B.2 and V.B.3 is **REVERSED**.

3. The Board's determination that no administrative penalties should be imposed upon G&F and CH is **REVERSED**.

4. The matter is **REMANDED** to the Board for further proceedings consistent with this opinion, and specifically to consider:

---

[73] G&F and CH's argument that 7 *Del. C.* § 6005(b) cannot be a statute of strict liability because it requires the assessment of culpability is unpersuasive. To the extent that Section 6005(b)(3) requires the Secretary to assess the degree of culpability in imposing a *penalty* for a violation, said requirement does not bar this Court's finding of strict *liability*. In other words, under Section 6005(b), the Secretary must first determine whether the violating party is liable for the violation, regardless of whether the party intended to commit the violation. Next, provided that the party is found liable, and should the Secretary elect to impose an administrative penalty pursuant to Section 6005(b)(3), the Secretary must assess the appropriate penalty based upon a number of factors, including the violator's culpability.

a) the appropriate administrative penalties to be imposed upon DSWA for its violations of Permit Conditions III.B.2 and V.B.3; and

b) the appropriate administrative penalties to be imposed upon G&F and CH for the statutory and regulatory provisions that they violated.

5. Upon remand, the Board shall not consider the propriety of any cost recoveries to be imposed, as that issue was not properly before the Board in the first instance.

**IT IS SO ORDERED**.

_____/s/ Noel Eason Primos_____
Judge

NEP/wjs
*Sent via File & ServeXpress*
oc:    Prothonotary
        Counsel of Record